678 S.E.2d 41

**Chad R. CLOWER, Petitioner Below, Appellee**

v.

**WEST VIRGINIA DEPARTMENT OF MOTOR VEHICLES, Joseph Cicchirillo, Commissioner, Respondent Below, Appellant.**

**No. 34329.**

Supreme Court of Appeals of West Virginia.

Submitted April 7, 2009.

Decided May 4, 2009.

Darrell V. McGraw, Attorney General, Janet James, Assistant Attorney General, Charleston, WV, for Appellant.

Carter Zerbe, Esq., Charleston, WV, Alan Riley, Esq., Romney, WV, for Appellee.

KETCHUM, J.

The respondent below and appellant, Joseph Cicchirillo, Commissioner of the West Virginia Division of Motor Vehicles ("the Commissioner"), appeals from an order of the Circuit Court of Hampshire County entered on the November 15, 2007. In its order, the circuit court reversed the Commissioner's administrative order revoking appellee's license to operate a motor vehicle in West Virginia following appellee's arrest for driving under the influence ("DUI"). Among several reasons for reversing the Commissioner, the circuit court found that the arresting officer did not have the "requisite reasonable suspicion" to stop the appellee's vehicle.

After careful consideration of the parties' arguments, the record designated for our consideration, and relevant authorities, we affirm the judgment of the circuit court.

I.

*Facts & Background*

On June 25, 2006, at approximately 1:19 a.m., appellee Chad R. Clower was driving west on U.S. Route 50 within the city limits of Romney, West Virginia. Traveling behind Mr. Clower was Trooper C.T. Kessel of the West Virginia State Police. Trooper Kessel testified that he was returning to the State Police barracks and that his police cruiser and Mr. Clower's vehicle "... were the only vehicles [Trooper Kessel] noticed in that course of roadway at that time" and that Mr. Clower's vehicle "was approximately two city blocks" in front of Trooper Kessel's patrol vehicle.

Trooper Kessel further testified that while he was still approximately two city blocks behind Mr. Clower's vehicle, he saw Mr. Clower make a right turn onto northbound Bolton Street, and that Mr. Clower did not use a turn signal prior to making the turn. Trooper Kessel, who was traveling at about 25 miles per hour, testified that he then sped up his cruiser, turned right onto Bolton Street, and followed Mr. Clower for approximately 3 blocks before initiating a traffic stop of Mr. Clower.

In his testimony, Trooper Kessel stated that the sole justification for the stop was that Mr. Clower had failed to use his turn signal in violation of *W.Va.Code,* 17C–8–9, which states in part:

Any stop or turn signal when required herein shall be given either by means of the hand and arm or by a signal lamp or lamps or mechanical signal device[.]

No other justification for stopping Mr. Clower was offered.

After pulling Mr. Clower over, Trooper Kessel approached Mr. Clower's vehicle and requested Mr. Clower's insurance and registration information. While Mr. Clower was getting these documents, Trooper Kessel testified that he observed Mr. Clower's eyes to be "glassy"[1] and bloodshot and that Mr. Clower also had slurred speech. Further, Trooper Kessel said he detected the odor of an alcoholic beverage. Trooper Kessel then had Mr. Clower exit the vehicle and perform three field sobriety tests—the walk-and-turn test, one-leg stand test, and the gaze nystagmus. Following these field sobriety tests, Trooper Kessel concluded that probable cause existed to believe that Mr. Clower was DUI. Trooper Kessel then administered a preliminary breath test with an Intoxilyzer which Mr. Clower failed. Mr. Clower was then arrested for suspicion of DUI and taken to the State Police barracks. At the State Police barracks Mr. Clower was administered an approved secondary chemical test, the Intoximeter EC/IR II. The results of the test showed Mr. Clower to have a BAC of .182 percent.[2] Mr. Clower was thereafter

---

1. The record indicates that Mr. Clower has one glass eye.

2. *W. Va.Code,* § 17C–5–2 [2005] makes it a misdemeanor for any person to operate a motor

**538**

charged with driving under the influence in violation of *W. Va.Code,* 17C–5–2.

Following Mr. Clower's arrest, Trooper Kessel completed a "Statement of Arresting Officer" and attached to that statement a photocopy of the Intoximeter results. These documents were then sent to the Department of Motor Vehicles as mandated by *W.Va. Code,* 17C–5A–1(b) [2004], upon receipt of which the Commissioner notified Mr. Clower that his license to operate a motor vehicle in the State of West Virginia was suspended for a period of six-months. As permitted by statute, Mr. Clower requested an administrative hearing to contest the suspension.

On December 5, 2006, a final administrative hearing was heard before the Commissioner's Hearing Examiner on Mr. Clower's challenge of the suspension. At that hearing, Mr. Clower argued that under *W.Va. Code,* 17C–8–8(a), a driver is only required to use a turn signal when "other traffic may be affected by [the turn]." Because Trooper Kessel was "approximately two city blocks" behind Mr. Clower's vehicle at the time of the turn, and that there were no other cars on the roadway at the time, Mr. Clower argued that the trooper did not have a reasonable, articulable suspicion to stop Mr. Clower. Mr. Clower therefore moved that all evidence be excluded on the grounds that Trooper Kessel did not have reasonable suspicion to stop his vehicle for failing to use a turn signal.

The Hearing Examiner rejected Mr. Clower's arguments, concluding that

> West Virginia Code § 17C–8–8(a) does not create an exception to West Virginia Code, § 17C–8–9, upon which the Arresting Officer based his statutory authority to make the traffic stop, whereby [Mr. Clower] would be excused from using a turn signal simply because traffic was unaffected by [Mr. Clower's] failure to do so.

After rejecting Mr. Clower's arguments, the Hearing Examiner concluded that Trooper Kessel "had reasonable grounds to stop" Mr. Clower, that Mr. Clower "was lawfully arrested for an offense" and that "sufficient

evidence was presented to show that [Mr. Clower] drove a motor vehicle ... while under the influence of alcohol...."

Based on the Hearing Examiner's findings, the Commissioner entered an order suspending Mr. Clower's license to operate a motor vehicle for six (6) months. Mr. Clower thereafter filed an appeal to the Circuit Court of Hampshire County.

By order filed on November 15, 2007, the circuit court reversed the Commissioner's administrative order, finding *inter alia* that under the circumstances of the case, Mr. Clower was not required by *W. Va.Code,* 17C–8–8(a) or 17C–8–9 to have used a turn signal because "no traffic whatsoever could be affected by [Mr. Clower's] failure to signal" and that Trooper Kessel did not have the requisite reasonable suspicion to stop Mr. Clower's vehicle.

The Commissioner now appeals to this Court seeking reinstatement of the order suspending Mr. Clower's license.

## II.

### Standard of Review

In this appeal we are asked to determine whether the circuit court erred in reversing the Commissioner's finding that *W.Va.Code,* § 17C–8–9 requires a driver of a vehicle to use a turn signal in all instances before making a left or right turn at an intersection. We are also asked whether the circuit court erred in reversing the Commissioner's order suspending Mr. Clower's driver's license on the grounds that Trooper Kessel did not have an articulable reasonable suspicion to stop Mr. Clower's vehicle.

These issues present questions of law that are subject to *de novo* review.

> Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.

Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995).

vehicle in this state when the person has "... an alcohol concentration in his or her blood of eight

hundredths of one percent [0.08%] or more, by weight...."

We have further held that "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syllabus Point 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). Further, that "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syllabus Point 1, *Francis O. Day Co., Inc. v. Director, Division of Environmental Protection*, 191 W.Va. 134, 443 S.E.2d 602 (1994).

With these standards in mind, we turn to the issues in this case.

## III.

### Discussion

The initial issue in this case is whether *W.Va.Code*, 17C–8–9 requires a motorist to signal the intent to turn at an intersection in all instances. The Commissioner argues that Trooper Kessel properly cited Mr. Clower for violating *W.Va.Code*, 17C–8–9 for failure to use a turn signal as Mr. Clower was required to use a turn signal in all instances prior to making a right turn under *W.Va. Code*, 17C–8–9. Converse to the Commissioner's arguments, Mr. Clower argues that he was not required to use a turn signal under the facts of this case because no other vehicle was affected by his turn, and that the Commissioner's interpretation of *W.Va.Code*, 17C–8–9 fails to recognize the provisions of *W.Va.Code*, 17C–8–8(a) that qualify when the use of a turn signal is—and is not—required. In response to Mr. Clower's argument, the Commissioner argues that Mr. Clower was cited for a violation of *W.Va.Code*, 17C–8–9 and not *W.Va.Code*, 17C–8–8(a) and that in any event *W.Va.Code*, 17C–8–8(a) does not create an exception to *W.Va.Code*, 17C–8–9.

Our analysis begins with a review of *W. Va.Code*, 17C–8–9 which provides, in part, that:

[a]ny stop or turn signal *when required herein* shall be given either by means of the hand and arm or by a signal lamp or lamps or mechanical signal device[.] (emphasis added).

The term "when required herein" is not elsewhere explained or defined within any other portion of *W. Va.Code*, 17C–8–9. However, a review *W.Va.Code*, 17C–8–8(a) provides (with emphasis added) that:

[n]o person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in sections two, three, four or five of this article, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. *No person shall so turn any vehicle without giving an appropriate signal* in the manner hereinafter provided *in the event any other traffic may be affected by such movement.*

It is clear that *W.Va.Code*, 17C–8–8(a) limits a motorist's duty to use a turn signal to those instances where "*any other traffic may be affected by such movement.*" The issue thus becomes whether *W.Va.Code*, 17C–8–8(a) and *W. Va.Code*, 17C–8–9 should be read in *para materia.*

This Court has previously held that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Further, that "[s]tatutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in *pari materia* to assure recognition and implementation of the legislative intent." Syllabus Point 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.*, 159 W.Va. 14, 217 S.E.2d 907 (1975). *Cf. Berkeley County Public Service Sewer Dist. v. West Virginia Public Service Commission*, 204 W.Va. 279, 512 S.E.2d 201(1998).

A review of Article 8, of Chapter 17C of the *West Virginia Code* reveals that the entire Article pertains to the turning, stopping

and use of signals for the turning or stopping of vehicles. *W. Va.Code*, 17C–8–1 provides that "[t]he driver of a vehicle intending to turn at an intersection shall do so as provided in this article." Further, Section 2 of *W.Va.Code* § 17C–8 deals with right turns, Section 3 with left turns on two-way roadways, and Section 4 with left turns on other than two-way roadways. This review makes clear, therefore, that the various Sections of Article 8 of Chapter 17C of the *Code* "relate to the same persons or things" and "have a common purpose" capable of being "regarded in *pari materia* to assure recognition and implementation of the legislative intent." Syllabus Point 5, in part, *Fruehauf Corp.* We therefore conclude that *W. Va.Code*, 17C–8–9 must be read in *para materia* with *W.Va. Code*, 17C–8–8(a).

Having determined that *W. Va.Code*, 17C–8–9 should be read in *para materia* with the other portions of Article 8 of Chapter 17C of the *Code*, we turn our attention to those other provisions. Our review makes abundantly clear that the entire scheme of Article 8 of Chapter 17C of the *Code* is that of regulating the movement of vehicles upon our roads for purposes of, *inter alia*, safety of other motorists, persons and property. The use of a turn signal—the point of dispute in this appeal—is only one safety aspect of the Article and other examples of the safety aspect of the Article are provisions regulating where a vehicle is to be positioned when making a turn, or stopping, and when a turn is not to be made at all.

With regard to those portions of Article 8 of Chapter 17C of the *Code* that require or reference the use of a turn signal, it is clear that the Legislature sought to require a motorist to warn others of the motorist's intent to make a turn. It is equally clear that the Legislature understood that in some situations a turn signal would serve no purpose and the Legislature specifically defined such a situation as being when "no other traffic may be affected by the movement." A clear example this latter situation is where a driver is on an isolated country road, with no other cars or pedestrians in sight, and the driver turns at an intersection without using a turn signal. A driver in such an example clearly would not have violated *W.Va.Code*, 17C–8–9 as there was no other person who could have benefitted from a turn signal.

■ Based upon our review of Article 8 of Chapter 17C of the *Code*, we conclude that the clear legislative intent behind the requirement of using a turn signal is to warn others of the motorist's intent to make a turn; however, the Legislature also clearly intended to qualify the requirement that a motorist use a turn signal to those occasions where others could be affected by the turning vehicle. Accordingly, a motorist who makes a turn at an intersection without first using a turn signal to notify others of the intent to make the turn does not violate the provisions of *W. Va.Code*, 17C–8–9 [1951], read in *para materia* with the provisions of *W. Va.Code*, 17C–8–8(a) [1999], where no other traffic may be affected by the movement of the motorist's vehicle.

Having determined that the use of a turn signal is not required in all instances, we turn to the Commissioner's interpretation of the law on this same issue. The Commissioner found that

> West Virginia Code 17C–8–8(a) does not create an exception to West Virginia Code, 17C–8–9, upon which the Arresting Officer based his statutory authority to make the traffic stop, whereby [Mr. Clower] would be excused from using a turn signal simply because traffic was unaffected by [Mr. Clower's] failure to do so.

For the reasons set forth above, we find the Commissioner's interpretation of the law on this issue to be clearly wrong, and therefore affirm the circuit court's order on this issue. "Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syllabus Point 1, *Francis O. Day Co., Inc. v. Director, Division of Environmental Protection*, 191 W.Va. 134, 443 S.E.2d 602 (1994).

We are next asked to consider whether the circuit court erred in reversing the Commissioner's order suspending Mr. Clower's driver's license on the grounds that Trooper Kessel did not have an articulable reasonable suspicion to stop Mr. Clower's vehicle. The

Commissioner makes several arguments on this issue.

First, the Commissioner argues that the circuit court abused its discretion by applying a "reasonable suspicion" standard to its review of the Commissioner's findings set forth in order suspending Mr. Clower's driver's license. The Commissioner's precise argument on this point is that while the Department of Motor Vehicles "has acquiesced in past years in requiring a showing of reasonable suspicion with regard to the stop of a vehicle, it was under no obligation to do so."

We have previously addressed the standard a law enforcement officer must have before making an investigatory stop. In *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), we were asked whether law enforcement officers must have actual probable cause to believe that a crime had been committed before making an investigatory stop of a motor vehicle, or whether the officers could rely on the lesser standard of reasonable suspicion without violating an individuals Fourth Amendment right against unreasonable search and seizure.

■ We concluded in *Stuart* that under the Fourth Amendment to the *United States Constitution* and Section 6 of Article III of the *West Virginia Constitution* "[p]olice officers may stop a vehicle to investigate if they have an articulable reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime[.]"[3] Syllabus Point 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886. We find no reason to revisit our decision in *Stuart*.

The Commissioner alternately argues that the circuit court abused its discretion in finding that Trooper Kessel did not have an articulable reasonable suspicion to make the traffic stop of Mr. Clower's vehicle. The Commissioner argues that Trooper Kessel's belief that Mr. Clower had committed a misdemeanor traffic offense in his presence constituted a sufficient articulable reasonable suspicion for stopping Mr. Clower's vehicle. In *Stuart* we noted that law enforcement

officers were constitutionally required to "articulate facts which provide some minimal, objective justification for the stop." *State v. Stuart*, 192 W.Va. at 433 n. 10, 452 S.E.2d at 891 n. 10, *citing United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (officer must be able to articulate something more than an "inchoate and unparticularized suspicion or hunch"). We further noted in *Stuart* that:

> The criteria for reasonable suspicion to stop a vehicle are very similar to a street stop under *Terry*. Factors such as erratic or evasive driving, the appearance of the vehicle or its occupants, the area where the erratic or evasive driving takes place, and the experience of the police officers are significant in determining reasonable suspicion.

*State v. Stuart*, 192 W.Va. at 433 n. 10, 452 S.E.2d at 891 n. 10.

■ The analysis required by a reviewing court in determining whether a law enforcement officer had sufficient reasonable suspicion to initiate a traffic stop, is that of a totality of the circumstances. "When evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syllabus Point 2, *Stuart*. The evaluation of whether reasonable suspicion existed at the time of a traffic stop or other brief investigatory detentions involves a two-step inquiry. We first consider "whether the officer's action was justified at its inception" and second "whether [the action] was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See also, State v. Jones*, 193 W.Va. 378, 456 S.E.2d 459 (1995); *State v. Joseph T.*, 175 W.Va. 598, 336 S.E.2d 728 (1985).

■ It is clear from the record that the sole basis for Trooper Kessel's decision to stop Mr. Clower's vehicle was that Trooper Kessel believed Mr. Clower had committed a

---

**3.** Our decision in *Stuart* overruled *State v. Meadows*, 170 W.Va. 191, 292 S.E.2d 50 (1982), which required that police officers have actual probable cause before making an investigatory stop.

misdemeanor traffic offense by making a right turn without using a turn signal. There is no evidence that Mr. Clower did any other act to arose Trooper Kessel's suspicion and Trooper Kessel even testified that there was not any other basis for his stopping Mr. Clower's vehicle.[4]

Mr. Clower argues that because no other traffic was affected by his right turn, it was *un*reasonable for Trooper Kessel to believe that Mr. Clower committed a misdemeanor traffic offense by making the right turn. As discussed *supra*, W. Va. Code, 17C–8–9 does not require the use of a turn signal in all instances. Whether Mr. Clower's right turn in the case *sub judice* required the use of a turn signal requires a close review of the record.

A review of Trooper Kessel's testimony at the administrative hearing is helpful in determining whether Mr. Clower should have used a turn signal. The following portions of Trooper Kessel's testimony, involving questions posed by Mr. Clower's attorney and Trooper Kessel's responses, are particularly helpful:

Q. ... You were about, about a block [away] then?

A. I was approximately two city blocks from him, I was coming through the stop light.

Q. Okay. So he was about two blocks ahead of you?

A. Approximately, yes.

. . .

Q. So, you're about two block behind him and then you see him turn right?

A. That's correct.

. . .

Q. ... And was there, was there anything to obstruct your vision between your car and [Mr. Clower's] car?

A. Actually no. My vehicle and [Mr. Clower's] vehicle was [sic] the only vehicles I noticed in that course of the roadway at that time.

. . .

Q. ... And then you noticed the vehicle turn right onto Bolton [Street]?

A. That's correct.

. . .

Q. Okay. And you had a clear view of it for two blocks away?

A. That's correct.

. . .

Q. Okay. Now, and there's no other cars on the road except yours and his and in that, the whole vicinity?

A. That's correct. That I can recall.

. . .

Q. ... It'd be fair to say that even if [Mr. Clower] didn't give a turn signal there's no other traffic adversely affected by the fact he didn't give a signal?

A. Other than me ...

Q. ... And you were two blocks away?

A. That's correct but still he needs to, with me on the roadway, he needs to be advised, advise other drivers of his indication to turn.

Q. Okay. But, you were two blocks away, you didn't have to hit the brakes or change your speed because he didn't give a signal, did you?

A. Actually, by the time he slowed down to make a turn, I was close to his vehicle.

After further cross-examination, Trooper Kessel defined "close to his vehicle" as meaning approximately one block and closing:

Q. ... So, you were in between at least one block and two blocks away from [Mr. Clower] at the time [Mr. Clower] made the turn, were you not?

---

4. At the administrative hearing following Q & A took place:
Mr. Clower's Attorney: And he [Mr. Clower] wasn't doing anything else wrong other than not giving the signal?
Trooper Kessel: No.
. . .

Q. Okay. For instance, he wasn't speeding or weaving or doing any of the common things that you might associate with a ...
A ... No ...
Q ... with a potential DUI arrest?
A. No.

A. Approximately one block, probably, and closing.

Based on Trooper Kessel's testimony, it is difficult for this Court to conclude that Trooper Kessel was in any manner affected by Mr. Clower's making a right turn without signaling. Trooper Kessel—whose police cruiser was the only other vehicular traffic in the vicinity—was at least one block away from Mr. Clower when Mr. Clower made the right turn. Under these facts, Trooper Kessel could not possibly have been affected by Mr. Clower's right turn. Accordingly, we conclude that Trooper Kessel's stopping Mr. Clower's vehicle was not "justified at its inception," *Terry v. Ohio*, 392 U.S. at 20, 88 S.Ct. 1868, and that Trooper Kessel did not have grounds upon which to form an articulable reasonable suspicion to believe that Mr. Clower had committed a misdemeanor traffic offense in violation of *W. Va.Code,* § 17C–8–9.

The circuit court therefore properly concluded that "no traffic whatsoever could be affected by [Mr. Clower's] failure to signal" and that Trooper Kessel did not have the requisite reasonable suspicion to stop Mr. Clower's vehicle.

We next turn to the issue of whether the circuit court properly reversed the Commissioner's Administrative Order.

Initially, we note that this appeal arises from an administrative proceeding held pursuant to the Administrative Procedure Act, Chapter 29A–5–1, *et seq.,* and the *Legislative Rules for the Division of Motor Vehicle, Series 1, Administrative Due Process.* 91 C.S.R. 1, *et seq.* Rule 91, Series 1 provides the framework for all administrative hearings in which a person seeks to contest an order of the Commissioner of Motor Vehicles.[5] Rule 91–1–3.9.2 further provides that "[t]he

provisions of W.Va.Code 29A–5–2 apply to questions concerning evidence."[6] *W.Va.Code,* 29A–5–2(a) in turn provides, in part, that the "rules of evidence as applied in civil cases in the circuit courts of this State shall be followed."

We have also held that

[u]pon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: (1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syllabus Point 2, *Shepherdstown Volunteer Fire Dept. v. West Virginia Human Rights Commission,* 172 W.Va. 627, 309 S.E.2d 342 (1983). *See also,* Syllabus Point 1, *Johnson v. State Department of Motor Vehicles,* 173 W.Va. 565, 318 S.E.2d 616 (1984); Syllabus Point 3, *State ex rel. Miller v. Reed,* 203 W.Va. 673, 510 S.E.2d 507 (1998).

Further, in an administrative revocation

---

**5.** Rule 91–1–2.1 provides that the legislative rules "applies to persons contesting any order or decision of the Commissioner of Motor Vehicle pursuant to Chapter 29A of the Code."

**6.** *W.Va.Code,* 29A–5–2(a) provides, in relevant part, that

In contested cases irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in civil cases in the circuit courts of this State shall be followed. When necessary to ascertain facts

not reasonably susceptible of proof under those rules, evidence not admissible thereunder may be admitted, except where precluded by statute, if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. Agencies shall be bound by the rules of privilege recognized by law. Objections to evidentiary offers shall be noted in the record. Any party to any such hearing may vouch the record as to any excluded testimony or other evidence.

proceeding, *W. Va.Code,* 17C–5A–2(e) (2004) [7] requires the Commissioner's hearing examiner to make three specific findings. First, the hearing examiner must find that the "arresting law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol...." Second, the hearing examiner must make findings "whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol ... or was lawfully taken into custody for the purpose of administering a secondary test." Third, the hearing examiner must make findings "whether the tests, if any, were administered in accordance with the [relevant law]."

As we have found, *supra,* Trooper Kessel's stopping Mr. Clower's vehicle was not "justified at its inception," *Terry v. Ohio,* 392 U.S. at 20, 88 S.Ct. 1868. Further, that Trooper Kessel did not have grounds upon which to form an articulable reasonable suspicion to believe that Mr. Clower had committed a misdemeanor traffic offense in violation of *W.Va.Code,* 17C–8–9. Additionally, Trooper Kessel's own testimony excludes any possibility that Trooper Kessel had any reason, prior to stopping Mr. Clower's vehicle, to believe that Mr. Clower was driving under the influence of alcohol.

Based on these facts, the circuit court concluded that Mr. Clower's was not lawfully placed under arrest because Trooper Kessel did not have the requisite articulable reasonable suspicion to initiate a traffic stop of Mr. Clower's vehicle. We agree. The Commissioner's hearing examiner was clearly wrong in concluding that Mr. Clower was lawfully placed under arrest for the reasons we have discussed in this opinion and the circuit court properly followed the Legislative mandate [8] set forth in *W.Va.Code,* 29A–5–4(g)—a mandate that specifically requires a circuit court to "reverse, vacate or modify" the Commissioner's order where the Commissioner's order was founded upon findings and conclusions that were in violation of constitutional or statutory provisions or made pursuant to unlawful procedure. In Mr. Clower's case, *W. Va.Code,* § 17C–5A–2(e) (2004) required that Mr. Clower's have been lawfully arrested—he was not.

Accordingly, we conclude that the circuit court did not abuse its discretion in reversing the Commissioner's administrative order suspending Mr. Clower's license to operate a motor vehicle in West Virginia.

## IV.

### Conclusion

For the reasons set forth in this opinion, the judgment of the Circuit Court of Hampshire County, rendered on the 15th day of November, 2007, is affirmed.

Affirmed.

---

7. *W. Va.Code,* § 17C–5A–2(e) was substantially rewritten by the Legislature in 2008, Our decision on this issue is therefore limited to the application of the 2004 version of *W. Va.Code,* § 17C–5A–2(e).

8. The Legislature's use of the word "shall" in subsection (g) is given the mandatory meaning of that term. *See* Syllabus Point 2, *Terry v. Sencindiver,* 153 W.Va. 651, 171 S.E.2d 480 (1969) ("The word 'shall', in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation.").