**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

vs)    **No. 13-0496** (Cabell County 11-F-114)

**Michael Sanchez Rogers,**
**Defendant Below, Petitioner**

**FILED**

June 13, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Michael Sanchez Rogers, by counsel A. Courtenay Craig, appeals the order of the Circuit Court of Cabell County entered on April 15, 2013, which committed him to the penitentiary for a period of one to fifteen years for possession with intent to deliver a controlled substance. Respondent State of West Virginia, by counsel Benjamin F. Yancey III, has filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 24, 2010, the Huntington Drug Task Force received a tip from a known confidential informant that one or several African-American males from Detroit, Michigan, a known source of drugs, would be exiting a Greyhound Bus that day in either Ashland, Kentucky, or Huntington, West Virginia. The informant further claimed that the man or men would have drugs intended for sale. Two members of the Task Force staked out the Ashland Greyhound Bus Station, and saw one African-American male exit a bus and enter a vehicle with West Virginia plates. Task Force member Corporal Vincent followed the vehicle, while Detective Kevin White followed the bus to Huntington in an attempt to see if any other African-American male exited the bus there.

Corporal Vincent later testified that he followed the vehicle to West Virginia where it exceeded the speed limit several times. When he got near the 29th Street exit of Interstate 64 in Huntington, Corporal Vincent radioed Deputy Paul Fields of the Cabell County Sheriff's Department to tell him the vehicle was speeding and that there were possible drugs on board. Deputy Fields then observed the vehicle speeding and initiated a traffic stop. During the stop, Deputy Fields asked for identification for the man who exited the bus, the driver, and his female passenger and ran them through the computer system. When speaking to the occupants, he found

1

out that the other two did not know petitioner, but had been offered fifty dollars to drive to Ashland and pick him up. Deputy Fields asked the occupants to exit the vehicle, and a K-9 unit was called to determine if there were drugs in the vehicle. The K-9 alerted the officers to drugs on board, and the officers searched the vehicle and petitioner's luggage without obtaining a search warrant. The actual search of petitioner's bag turned up twenty-nine and one-half Vicodin tablets, seventeen and one-half MDMA (ecstasy) tablets, twenty-three alprazolam tablets and thirty-four OxyContin tablets.

On March 9, 2011, petitioner and the other two occupants of the vehicle were indicted on possession with intent to deliver Vicodin, possession with intent to deliver MDMA (ecstasy), possession with intent to deliver Alprazolam, and possession with intent to deliver OxyContin. Petitioner filed a motion to suppress, arguing that while under federal law the officers could search when a K-9 alerted on a vehicle, the West Virginia Constitution provides greater protection regarding warrantless searches of vehicles, referring specifically to *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980) (*overruled on other grounds by State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991)), which, according to petitioner, holds that to justify a warrantless search, probable cause must exist to believe evidence of the crime is contained in the vehicle and there must be exigent circumstances which prevent obtaining a warrant. The circuit court denied the motion. Thereafter, petitioner agreed to a *Kennedy*[1] plea to possession with intent to deliver. He was sentenced to one to fifteen years of incarceration.

In *State v. Lilly*, 194 W.Va. 595, 600, 461 S.E.2d 101, 106 (1995), this Court explained the two-tier standard of review of a circuit court's ruling on a motion to suppress:

> [W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. *See State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886, 891 (1994). When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

(Footnotes omitted).

Petitioner asserts a single assignment of error on appeal; namely, that the circuit court erred when it failed to suppress the evidence taken from the warrantless search of the vehicle and petitioner's luggage because no warrant issued, no consent was given and no exigent circumstances existed which prevented the officers from obtaining a warrant. Petitioner argues that because the vehicle was pulled over for speeding, the officer who stopped it should only

---

[1]Petitioner entered his plea pursuant to *Kennedy v. Frazier*, 178 W.Va. 10, 357 S.E.2d 43 (1987), which reserves his right to appeal the denial of his motion to suppress.

have asked for the driver's identification and should have only questioned the driver. Further, petitioner argues that none of the occupants of the vehicle were a threat to destroy or tamper with any evidence; thus, a warrantless search was unnecessary as there were no exigent circumstances.

Police officers are required to have reasonable suspicion that the vehicle's occupants have committed, are committing, or are about to commit a crime in order to initiate a traffic stop. *See Clower v. W.Va. Dept. of Motor Vehicles,* 223 W.Va. 535, 541, 678 S.E.2d 41, 47 (2009).

> [T]he usual traffic stop is more analogous to a so-called "Terry stop," see *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than to a formal arrest. Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose "observations lead him reasonably to suspect" that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to "investigate the circumstances that provoke suspicion." *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975).

*Berkemer v. McCarty,* 468 U.S. 420, 439 (1984). Further, "[w]hen evaluating whether or not particular facts establish reasonable suspicion, one must examine the totality of the circumstances, which includes both the quantity and quality of the information known by the police." Syl. Pt. 2, *State v. Stuart,* 192 W.Va. 428, 452 S.E.2d 886 (1994).

In this case, there was reasonable suspicion to justify the police stopping the suspect vehicle initially, as both Officer Vincent and Deputy Fields saw the vehicle speeding. Additionally, there was probable cause, or at the very least reasonable suspicion, that the suspect vehicle was carrying illegal drugs, which also justified the police in stopping the vehicle. This probable cause and/or reasonable suspicion first came through a known confidential informant.

> The basic rules governing informant's tips are well-established. In cases where an informant's tip supplies part of the basis for reasonable suspicion, we must ensure that the tip possesses sufficient indicia of reliability. *See J.L.*, 529 U.S. at 270, 120 S.Ct. 1375; *Alabama v. White*, 496 U.S. 325, 326–27, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Where the informant is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion. *See Adams*, 407 U.S. at 146–47, 92 S.Ct. 1921 (tip from known source); *United States v. Christmas*, 222 F.3d 141, 144 (4th Cir.2000) (face-to-face tip from unknown source). Where a tip is anonymous, it must be accompanied by some corroborative elements that establish the tip's reliability. *See J.L.*, 529 U.S. at 270, 120 S.Ct. 1375; *White*, 496 U.S. at 329–31, 110 S.Ct. 2412. In fact, the Supreme Court has made clear that "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable

3

suspicion to make the investigatory stop." *J.L.*, 529 U.S. at 270, 120 S.Ct. 1375 (internal quotation omitted).

*U.S. v. Perkins,* 363 F.3d 317, 323 (2004). The confidential informant herein indicated that a black male from Detroit, a known source for drugs, would be traveling by Greyhound bus and would arrive in Ashland carrying drugs. The confidential informant also informed that another person from West Virginia was going to pick this individual up and take him back to West Virginia to distribute the drugs. This information was corroborated by the observations of Officer Vincent, who saw a black male carrying a bag get off the bus and get into a vehicle with West Virginia plates. The vehicle then drove to West Virginia. Therefore, the stop was not based on a mere hunch, but was based on the fact that the vehicle was speeding and corroboration of the informant's tip.

Petitioner next argues that it was unnecessary for the officer to obtain all of the occupants' identification or to question the occupants, as the stop was made based on the officers' claim that the vehicle was speeding. The State argues in response that Officer Fields did nothing different than what is commonly done at a traffic stop, as it is common for police to converse with vehicle occupants during a traffic stop. This is not a Fourth Amendment violation.

> While conducting the tasks associated with a traffic stop, a police officer's "questions or actions . . . need not be solely and exclusively focused on the purpose of that detention." Rather, a police officer may ask questions unrelated to the purpose of the stop, "provided that the unrelated questioning does not extend the encounter beyond the period reasonably necessary to effectuate the purposes of the lawful detention."

*U.S. v. Digiovanni,* 650 F.3d 498, 507 (4th Cir. 2011) (internal citations omitted). Moreover, prior to the stop, Officer Fields learned that there was reason to believe that illegal drugs were being transported in the vehicle. Upon questioning, the stories of the occupants "weren't jiving" as petitioner was from Detroit, a known drug area, and the two front passengers were from Charleston and claimed they did not know petitioner and were paid to go pick him up. Additionally, one of the occupants in the vehicle admitted that he was carrying a gun, although he claimed to have a permit. The presence of this gun was an additional cause for concern. Considering the totality of the circumstances and the brief time the occupants were detained, the officer's actions were reasonable in questioning the occupants and requesting their identification.

The request for a K-9 unit was likewise reasonable. Officer Fields did not make the request immediately, but only after briefly questioning the occupants. Based on what the officer learned during his brief conversation with the occupants and the known informant's tip, the officer clearly had more than a mere hunch that there were drugs in the vehicle. Further, given that the stop took place at 11:07 p.m. and the K-9 unit arrived at 11:18 p.m., petitioner and the other occupants were not unreasonably detained. The dog then performed an exterior sniff, reacting positively to the passenger side door. This gave the police probable cause that there were drugs in the interior, and thus the dog was allowed to sniff inside the vehicle, where he reacted positively to the backseat floorboard area and petitioner's bag. Under these circumstances, there was nothing wrong with the

4

use of the police dog. In *Illinois v. Cabelles,* 543 U.S. 405, 410 (2005), the Supreme Court of the United States held that "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." Further, "any interest in possessing contraband cannot be deemed 'legitimate,' and thus, governmental conduct that only reveals the possession of contraband 'compromises no legitimate privacy interest.'" *Id.* at 408. Once the dog alerted to drugs in the vehicle, this gave the police probable cause to believe that there were in fact drugs. The search revealed several different controlled substances.

This Court has previously noted that "[i]n order to come within the automobile exception which authorizes a warrantless search, the police must initially have probable cause to believe that the automobile contains contraband or evidence of a crime. Second, there must be exigent circumstances which prevent the obtaining of a search warrant." Syl. Pt. 3, *State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804 (1980) (overruled on other grounds by *State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991). Further,

> [a]n automobile may be stopped for some legitimate state interest. Once the vehicle is lawfully stopped for a legitimate state interest, probable cause may arise to believe the vehicle is carrying weapons, contraband or evidence of the commission of a crime, and, at this point, if exigent circumstances are present, a warrantless search may be made.

Syl. Pt. 4, *id.* Petitioner relies largely on the requirement of exigent circumstances, arguing that there were none here. The *Moore* Court held:

> [I]n *Carroll v. United States,* 267 U.S. 132, 69 L.Ed. 543, 45 S.Ct. 280 (1925), . . . the court concluded that because of the mobility and diminished expectations of privacy surrounding a motor vehicle, warrantless searches could be made under two conditions. First, the police must initially have probable cause to believe that the automobile contains contraband or evidence of a crime. Second, there are exigent circumstances which prevent the obtaining of a search warrant.

165 W.Va. at 843-44, 272 S.E.2d at 809 (footnotes omitted). It is clear from this passage that the second prong of the test does not afford petitioner any more protection than federal law, as the second prong, as well as the first, come from federal law in what has become known as the *Carroll* doctrine.

This Court also finds that under the facts of this case, an exigent circumstance did exist. If the vehicle had not been detained and searched, the driver would have driven away with the illegal drugs onboard; thus, a search warrant was not needed. This Court has noted that: "[t]he exigent circumstance is that unless the vehicle is detained and searched it will be driven away and, therefore, a warrant need not be obtained." *Moore,* 165 W.Va. at 844, 272 S.E.2d at 810. In other words, there is a critical difference between "the necessity for a search warrant between goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods in course

5

of transportation and concealed in a moveable vessel where they readily could put out of reach of a search warrant." *Carroll v. U.S.,* 267 U.S. 132, 151.

Lastly, petitioner argues that even if this Court were to find that the search of the vehicle was proper, the search of his bag was not because the bag was not in petitioner's possession and he could not have tampered with the evidence therein during the stop. The Supreme Court of the United States held in *U.S. v. Ross,* 456 U.S. 798, 825 (1982), that:

> The exception recognized in *Carroll* is unquestionably one that is "specifically established and well delineated." We hold that the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

Since then, the Supreme Court of the United States has issued numerous decisions holding that police officers may search containers within vehicles where they have probable cause to believe that the vehicle and/or such containers within vehicles contain contraband. Here, the police had probable cause to search the vehicle and petitioner's bag based on the dog's alert outside the vehicle, inside the vehicle, and regarding the bag. The court committed no error in denying petitioner's motion to suppress.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II