# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Patricia S. Reed, Commissioner of**
**The West Virginia Department of Motor Vehicles,**
**Petitioner**

**FILED**

**January 19, 2017**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-1147**         (Monongalia County 14-AA-1)

**Benjamin J. McGrath,**
**Respondent**

## MEMORANDUM DECISION

Petitioner, Patricia S. Reed, Commissioner of the West Virginia Department of Motor Vehicles ("DMV"), appeals an October 30, 2015, order by the Circuit Court of Monongalia County. In its order, the circuit court found that the Office of Administrative Hearings ("OAH") erred when it affirmed the DMV's revocation of respondent, Benjamin McGrath's, driver's license for driving under the influence of alcohol.  Mr. McGrath, *pro se*, filed a response, to which the DMV filed a reply.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon consideration of the standard of review, the briefs, oral arguments, and the record presented, we find no prejudicial error in the circuit court's effective reinstatement of Mr. McGrath's driver's license.  For this reason, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This appeal stems from Mr. McGrath's DUI arrest on the night of September 23, 2010. At 11:00 that night, Officer Dennis Logie of the Monongalia County Sherriff's Department was in Mr. McGrath's neighborhood to investigate an unrelated domestic dispute.  He saw Mr. McGrath and his girlfriend standing in their private driveway, and he mistakenly assumed they were the subject of the unrelated domestic dispute.  He walked up Mr. McGrath's driveway to ask the couple about what they had been doing that night.

Mr. McGrath's truck was parked in his driveway when Officer Logie approached. During this encounter, Mr. McGrath voluntarily answered Officer Logie's questions about what he and his girlfriend had been doing that night, and he told Officer Logie that, at an unspecified time before the encounter, he moved his truck within his driveway "four to five feet."  Mr. McGrath claims that he explained to Officer Logie that his reason for doing so was to shine his headlight on tools that had fallen to the ground to make picking them up easier.  There is no evidence in the record that Mr. McGrath's headlights were still on or that his engine was warm or had been running when Officer Logie approached.

Officer Logie noticed that Mr. McGrath seemed intoxicated.  He administered a series of field sobriety tests, all of which Mr. McGrath failed.  Officer Logie then placed Mr. McGrath

under arrest for DUI. However, the record contains no evidence as to when Mr. McGrath started drinking compared to when he moved his truck within his driveway, *i.e.*, that he became intoxicated before, not after, he drove.

Based on Officer Logie's account of Mr. McGrath's arrest, the DMV issued an order on November 4, 2010, revoking Mr. McGrath's driver's license for forty-five days. Through counsel, Mr. McGrath requested an administrative hearing to challenge his license revocation before the OAH, which was held on June 8, 2011. Mr. McGrath also challenged the criminal charges arising from his DUI arrest, which were dismissed on June 9, 2013.[1]

Both Officer Logie and Mr. McGrath testified at the OAH hearing. Officer Logie recounted how he approached Mr. McGrath out of the mistaken assumption that he and his girlfriend were engaged in a domestic dispute. He also testified that Mr. McGrath admitted to moving his truck within his private driveway at some unspecified time that night, although he could not testify as to when this occurred. Finally, Officer Logie posited that there was no other way for Mr. McGrath to get to "his girlfriend's premises" other for him to have driven there, apparently based on the mistaken notion that Mr. McGrath's girlfriend was the sole occupant of the residence. Mr. McGrath and his girlfriend lived together at the residence.

After considering Officer Logie's and Mr. McGrath's testimony, the OAH entered an order on February 5, 2014, affirming the DMV's revocation of Mr. McGrath's driver's license. In the order, the OAH found that: "sufficient evidence was presented to show that on October 30, 2011 [sic],[2] [Mr. McGrath] drove a motor vehicle in this State while under the influence of alcohol[.]"

Mr. McGrath appealed the OAH's order to the circuit court, arguing that he moved his truck before, not after, he became intoxicated. The circuit court found that "the OAH was clearly wrong in revoking [Mr. McGrath's] driver's license."[3] The DMV now appeals the circuit court's order to this Court.

---

[1] The dismissal of Mr. McGrath's criminal charges for DUI, in itself, does not preclude the DMV from revoking a driver's license for DUI. *See* Syl. Pt. 4, in part, *Miller v. Epling*, 229 W.Va. 574, 729 S.E.2d 896 (2012) ("When a criminal action for driving while under the influence . . . results in a dismissal or acquittal, such dismissal or acquittal has no preclusive effect on a subsequent proceeding to revoke the driver's license[.]").

[2] Mr. McGrath's arrest was on September 23, 2010.

[3] The circuit court incorrectly used the standard applying to investigatory traffic stops to find Mr. McGrath was not properly arrested for DUI, even though this case did not involve an investigatory traffic stop. In cases which do not involve an investigatory traffic stop, "the standard governing the lawfulness of an investigatory traffic stop is clearly inapplicable[.]" *Cain v. W.Va. Div. of Motor Vehicles*, 225 W.Va. 467, 471, 694 S.E.2d 309, 314 (2010). Even though the circuit court erred by applying an inapplicable standard to this case, we examine this case to determine whether, notwithstanding, it reached the correct result – that the revocation of Mr. McGrath's driver's license was not proper.

Our review of the circuit court's order reversing Mr. McGrath's driver's license revocation is subject to the following standard of review:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 519 (1996). Under this standard of review, "A finding is clearly erroneous if there is no substantial evidence in the record supporting it[.]" *Powell v. Paine*, 221 W.Va. 458, 462, 655 S.E.2d 204, 208 (2007). Accordingly, an agency's finding is not valid if supported only by a "mere scintilla." *See* Syl. Pt. 4, in part, *In re Queen*, 196 W.Va. 442, 473 S.E.2d 283 (1996) ("'Substantial evidence' requires more than a mere scintilla.").

Further, as the West Virginia Code clearly mandates, a driver's license may be revoked for DUI only if the accused drove his/her motor vehicle *while* under the influence of drugs or alcohol. Under West Virginia Code § 17C-5A-2(e), "The principle question at the hearing [on an administrative revocation of a driver's license for DUI] shall be whether the person did drive a motor vehicle *while* under the influence." (Emphasis added). Accordingly, we have held that for a driver's license to be revoked for DUI, it is required that "the arresting officer had reasonable grounds to believe that the accused individual had been driving his or her vehicle *while* under the influence of alcohol, controlled substances, or drugs." Syl. Pt. 3, in part, *Cain v. W.Va. Div. of Motor Vehicles*, 225 W.Va. 467, 694 S.E.2d 309 (2010) (emphasis added). Under West Virginia Code § 17C-5C-4(d) [2010], the DMV, not the accused, carries the burden of proving these facts. Thus, the revocation of Mr. McGrath's driver's license must be supported by substantial evidence from the DMV that he was already under the influence of alcohol by the time he moved his truck on the night of his arrest.

Even though there is substantial evidence in the record that Mr. McGrath was under the influence at 11:00 pm at his residence on the night of his arrest, and that, at some unspecified time earlier that night, he moved his truck "four to five" feet within his driveway, there is not substantial evidence that he was under the influence *while* he moved his truck. There is no evidence in the record that Officer Logie tried to determine when Mr. McGrath started drinking as compared to when he moved his truck within his private driveway, that Mr. McGrath divulged this information on the night of his arrest, or that the night's timeline established that he drove his truck while under the influence.

Moreover, the circumstances surrounding Mr. McGrath's arrest do not indicate that he was under the influence by the time he moved his truck within his driveway. *See* Syl. Pt. 3, *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 427 (1997) (When an officer does not witness the accused drive his/her motor vehicle, an administrative revocation for driving under the influence is proper *if* "all the surrounding circumstances indicate the vehicle could not otherwise be located

3

where it is unless it was driven there by that person."). There have been two cases, revealed by this Court's research, wherein we were presented with an accused's defense that he/she became intoxicated after having driven a motor vehicle. *See Cain v. W. Va. Div. of Motor Vehicles*, 225 W.Va. 467, 470 n.7, 694 S.E.2d 309, 312 n.7 (2010) ("By implication, the trial court was recognizing the possibility that Appellee did not begin drinking until he parked his vehicle."); *Dale v. Reynolds*, No. 13-0266, 2014 WL 1407375 at *2 (W. Va. 2014) ("[T]he question presented for this Court's decision is whether the evidence proves that [the accused] operated a motor vehicle during his intoxication.").

Both *Cain* and *Reynolds* involved significantly different circumstances which casted doubt on the accuseds' defense that they did not become intoxicated until after they drove. In *Cain*, the accused, who was found sleeping on the side of a rural stretch of state highway, told his arresting officer he drank three hours prior to his arrest, but "when [the officer] had driven by that same spot less than thirty minutes earlier, no vehicle was parked there." *Cain*, 225 W.Va. at 472, 694 S.E.2d at 314. Likewise, in *Reynolds*, the accused was found in a Kroger parking lot and admitted to the officer "he had starting drinking at [a] Park and Ride and later moved to the Kroger parking lot." *Reynolds*, 2014 WL 1407375 at *1. We found that under the circumstances of that case "it was reasonable to believe he drove the vehicle while intoxicated. Mr. Reynolds unquestionably drove the vehicle from the Park and Ride where he was admittedly drinking, to Kroger, where he was indisputably drunk." *Id.*, at *4.

By contrast, Mr. McGrath's arrest for DUI contained no similar circumstances which would indicate he was already under the influence when he moved his truck within his driveway. Officer Logie found Mr. McGrath at his residence, which is consistent with his defense that he drank after he moved his truck. Further, there is nothing in the record indicating that Officer Logie previously passed by Mr. McGrath's residence that night and noticed his truck in a different location in his driveway. Finally, there is no evidence in the record that Mr. McGrath's engine was warm or had been running or that his headlights were on when Officer Logie approached, as might have been the case if Mr. McGrath had moved his truck shortly before his arrest. In short, the record does not contain substantial evidence that Mr. McGrath committed an offense involving DUI. Accordingly, the revocation of Mr. McGrath's driver's license was not proper.

Based on the foregoing, the decision of the Circuit Court of Monongalia County is affirmed.

**ISSUED:** January 19, 2017

4

**CONCURRED IN BY**:
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

**CONCURRING AND WRITING SEPARATELY:**
Justice Robin Jean Davis

**DISSENTING AND WRITING SEPARATELY:**
Chief Justice Allen H. Loughry II


Davis, Justice, concurring:

The Court's decision in the case *sub judice* correctly interpreted and applied the applicable law to affirm the circuit court's ruling. Simply stated, it would be ludicrous to find that Mr. McGrath had been driving under the influence on a public highway in violation of W. Va. Code § 17C-5-2(e) (2010)[1] when evidence thereof is wholly lacking. I write separately, however, because, in our consideration of this matter, I have come to realize that the Court's decision in the recent case of *Reed v. Beckett*, No. 15-1044, 2016 WL 6407492, ___ W. Va. ___, ___ S.E.2d ___ (2016), is patently wrong and contrary to the governing statutory authority. Upon profound reflection, I have concluded that the only worse thing than being wrong is to not admit it. Therefore, I write separately to explain why my esteemed colleague, Justice Benjamin, was right to dissent in the *Beckett* case and why I and my remaining brethren have committed a grave miscarriage of justice by usurping the personal rights of the citizens of this great State.

In the Court's decision of *Beckett*, the majority determined that a private citizen, driving an ATV on privately-owned family farmland, could be adjudicated of DUI and his driving privileges revoked therefor. Such a result is simply preposterous because it is not supported by this State's DMV laws. To begin, the crime with which Mr. Beckett was initially charged and which formed the basis for his administrative license revocation proceedings, driving while under the influence in violation of W. Va. Code § 17C-5-2(e) (2010),[2] requires that the subject

_____

[1]Although Mr. McGrath's license revocation proceedings at issue herein were administrative in nature, they were precipitated by his initial charge of DUI under W. Va. Code § 17C-5-2(e) (2010).

[2]W. Va. Code § 17C-5-2(e) (2010) provides, in pertinent part, as follows:

> Any person who drives a vehicle *in this state* while he or she has an alcohol concentration in his or her blood of fifteen hundredths of one percent or more, by weight, is guilty of a misdemeanor and, upon conviction thereof, shall be confined in jail for not less than two days nor more than six months, which jail term is to include actual confinement of not less than twenty-four hours, and shall be fined not less than two hundred dollars nor more than one thousand dollars. . . .

(Emphasis added).

5

driving occur "in this state." In this regard, W. Va. Code § 17C-5-2a(a) (1983) specifically defines "in this State" as follows:

> For purposes of this article and article five-A [§§ 17C-5A-1 et seq.] of this chapter, the phrase "in this State" shall mean anywhere within the physical boundaries of this State, including, but not limited to, *publicly maintained streets and highways*, and subdivision streets *or other areas not publicly maintained but nonetheless open to the use of the public* for purposes of vehicular travel.

(Emphasis added). Thus, it is clear that the driving "in this state" reference in W. Va. Code § 17C-5-2(e) contemplates driving under the influence on a public thoroughfare. This is the only logical construction of this statute because nowhere in the definitional provision does the Legislature expressly state or implicitly suggest that operating a motor vehicle on *private* property is subject to criminal penalties. Rather, the only roadways referenced in this section are those that are "publicly maintained" or "open to the use of the public." W. Va. Code § 17C-5-2a(a). By contrast, *private* property simply is not considered much less expressly mentioned in this statutory language. Therefore, pursuant to the expression *expressio unius est exclusio alterius*, it may properly be inferred that the only impaired driving subject to criminal penalties under W. Va. Code § 17C-5-2(e) is that which occurs on a public roadway. *See* Syl. pt. 1, in part, *State ex rel. Battle v. Hereford*, 148 W. Va. 97, 133 S.E.2d 86 (1963) ("A statute which provides for a thing to be done in a particular manner . . . implies that it shall not be done otherwise . . .; and the maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies to such statute."). *See also* Syl. pt. 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984) ("In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies."). Driving while under the influence on purely private property that is not accessible to the public, ill-advised though it may be, simply does not satisfy the statutory elements of the crime defined by W. Va. Code § 17C-5-2(e), and the majority in the *Beckett* case was wrong to find that it does.

Moreover, the motorized conveyance driven by Mr. Beckett was an ATV. By definition, an ATV cannot be a vehicle within the contemplation of the DMV statutes because an ATV is not authorized to be driven on public highways. The statute under which Mr. Beckett was charged, W. Va. Code § 17C-5-2(e), specifically refers to a "person who drives a *vehicle*." (Emphasis added). The Legislature has defined the term "vehicle" to mean "every device in, upon or by which any person or property is or may be transported or drawn upon a *highway*." W. Va. Code § 17A-1-1(a) (2010) (emphasis added). The term "highway" refers to "the entire width between boundary lines of every way *publicly maintained* when any part thereof is *open to the use of the public* for purposes of vehicular travel." W. Va. Code § 17A-1-1(ff) (emphasis added).

In contrast to the definition of a vehicle, an "ATV," or all-terrain vehicle, is defined as a non-highway vehicle:

> any motor vehicle designed for *off-highway use* and designed to travel on not less than three low-pressure tires, having a seat or saddle designed to be straddled by

the operator and handlebars for steering control and intended by the manufacturer to be used by a single operator or by an operator and no more than one passenger.

W. Va. Code § 17A-1-1(ii) (emphasis added).  Moreover, an ATV generally cannot be operated on a public roadway insofar as its use on highways is severely restricted:

> (a) No all-terrain vehicle may be operated in this state:
>
>> (1) On any interstate highway except by public safety personnel responding to emergencies;
>>
>> (2) On any road or highway with a center line or more than two lanes except for the purpose of crossing the road, street or highway[.]

W. Va. Code §§ 17F-1-1(a)(1-2) (2004).  As such, it is clear that, by definition, an ATV is not permitted to be operated on the very public roadways upon which impaired driving is prohibited by W. Va. Code § 17C-5-2(e).  Again, it is apparent that the majority's conclusion regarding Mr. Beckett's impaired operation of an ATV on private farmland simply is not supported by the governing authority because such behavior does not rise to the level of conduct statutorily barred by W. Va. Code § 17C-5-2(e).  Thus, the Court's decision upholding the revocation of Mr. Beckett's driver's license, in which I regrettably joined, was, simply, wrong.

I appreciate that my epiphany has come too late to right the injustice regrettably done to Mr. Beckett by this Court's erroneous decision.  It has been said that "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late."  *Henslee v. Union Planters Nat'l Bank & Trust Co.,* 335 U.S. 595, 600, 69 S. Ct. 290, 293, 93 L. Ed. 259 (1949) (per curiam) (Frankfurter, J., dissenting).  I am just grateful that I recognized such wisdom when it presented itself in Justice Benjamin's *Beckett* dissent and again in the context of the instant proceedings.


Loughry, C.J., dissenting:

The evidence presented during the OAH hearing clearly established that the respondent was under the influence of alcohol when he drove a motor vehicle on his property.  By concluding otherwise, the majority of this Court ignores key testimony in the record to justify its acceptance of a version of events not supported by the evidence and not even suggested by the respondent until his case was on appeal.

The record reveals that at approximately 11:00 p.m. on the night of September 23, 2010, Sheriff's Deputy Logie responded to a report of a domestic dispute on Maple Drive in Morgantown.  The deputy, upon observing the respondent and others outside a residence on Maple Drive, approached and asked questions to assess the situation.  The respondent told the deputy that he and his girlfriend had an argument, he got angry, and he attempted to leave in his truck.  The deputy observed an overturned toolbox lying in the driveway near the truck.

7

During the OAH hearing, the respondent testified that his girlfriend had just arrived at their residence when they argued and she kicked the toolbox over in anger. The respondent conceded that he drove his truck in the driveway, asserting that he moved the truck to retrieve tools and nails that had spilled from the toolbox. The respondent emphasized that he was in a hurry to pick up the tools and nails from the driveway so that no car tires would be punctured, and that he was in the process of cleaning up the spilled contents when the deputy arrived.[1]

---

[1]The respondent testified to the following sequence of events:

Q. And how did that toolbox come to be on the ground?
A. Well, when me and my girlfriend were having an argument, she knocked it over.
. . . .
Q. So you said you and she got into an argument. Is that true?
A. Right. *She just had arrived home*, and I was outside working on [another vehicle in the driveway], and she was upset with me, you know, which led me to be upset with her. We exchanged some words, and you know . . .
Q. How did the toolbox get knocked over?
A. She got mad and kicked it over.
Q. And then what did you do in response to your toolbox being knocked over?
A. I had a bunch of nails in it from a brad gun, and that was right where she parked and also right in front of the truck that I just bought, *so I backed the truck so I could see all the nails in the gravel and pick them up.*
Q. So there's no question that you backed your car up.
A. No.
Q. You did.
A. Yes, sir. There's no question.
Q. And did you ever leave your driveway?
A. No, sir.
Q. How far did you back it up?
A. About 4 or 5 feet.
Q. And then were you able to pick up the tools and the nails and the brads?
A. I was in the process of picking up the tools when I looked up and I saw a flashlight [held by Deputy Logie] coming down the driveway . . . .

(Italicized emphasis added.) The respondent also testified how he was in a hurry to pick up the tools and nails:

Q. How did she get there?
A. She drove herself. *She had just come back.*
Q. And what kind of vehicle was she driving?
A. A Chevy Cavalier.
Q. And where was it parked?
A. It was over in this area [referring to a photograph of his driveway]. You can't really see down in there, but there's a side parking right there. *Usually she would*

The respondent's neighbor, Jacob Madison, testified he heard the raised voices of the respondent and girlfriend during their argument, but he did not go outside until he heard the sound of the toolbox being overturned. Mr. Madison was present in or near the respondent's driveway when the deputy arrived.

It was obvious to Deputy Logie that the respondent was intoxicated. The respondent smelled of alcohol; was unsteady while standing; had bloodshot, glassy eyes; had slow, slurred speech; and, at times, acted in a manner that was aggressive and a "little bit" defiant. When the deputy asked whether he had been drinking, the respondent admitted he had been drinking beer. Because the respondent appeared to be under the influence, and because the respondent admitted to driving a vehicle, Deputy Logie asked the respondent to submit to field sobriety testing.[2] The deputy administered three field sobriety tests–the walk and turn, one leg stand, and horizontal gaze nystagmus tests–all of which the respondent failed. Although the deputy administered a preliminary breath test, after three attempts the respondent was unable to provide a sufficient breath sample. Deputy Logie immediately placed the respondent under arrest for DUI and transported him to a local police station, where the respondent registered a .150 on the designated secondary chemical breath test. A result of .150 is almost twice the legal limit. *See* W.Va. Code § 17C-5A-2(j) (2015) (requiring license revocation if person 21 years of age or older drives while having blood alcohol content of .08 or higher).

During the OAH hearing, the respondent did not dispute that he was under the influence of alcohol when he moved his truck, nor did he challenge the validity of the secondary test result.[3] Based on all of the evidence presented at the hearing, including the respondent's

---

> *be parking where the tools were, which is why I was in a hurry to pick them up. I didn't want her tires to get popped, or you know, anybody turning around, because you kind of had to turn around right there.*

(Italicized emphasis added.) When the DMV lawyer asked whether it was correct that the respondent moved the truck "right before" the deputy arrived, the respondent did not disagree:

> Q. And Deputy Logie's recollection of you telling him that you got in your truck *right before* he got there and backed it up is correct.
> A. I backed it up so I could see, put lights on my tools so I could pick them up.

(Italicized emphasis added.)

[2]Although Deputy Logie did not personally see the respondent driving while under the influence, a police officer does not need to be a witness so long as the circumstances present reasonable grounds to believe that the person did drive drunk. *See Cain v. W.Va. Div. of Motor Vehicles*, 225 W.Va. 467, 471, 694 S.E.2d 309, 313 (2010).

[3]During the evidentiary hearing, the respondent argued that revocation was improper because he drove only in his own driveway. This argument is of no avail because "[t]he Legislature's definition of the phrase 'in this State' in W.Va. Code § 17C-5-2a(a) [1983] extends the reach of our driving-under-the-influence laws to any individual driving a vehicle within the physical boundaries of West Virginia, even if the vehicle is driven only upon private property not

multiple admissions that he drove his truck and the overwhelming proof of intoxication, the OAH hearing examiner correctly found that the respondent was under the influence when he drove.

However, on appeal to the circuit court and again to this Court, the respondent attempted to assert new "facts" not in the record. He now claims that he was not under the influence of alcohol when he drove the truck; rather, he says he moved the truck earlier in the evening before he became intoxicated. Critically, neither he nor his lawyer suggested this scenario during the OAH evidentiary hearing, notwithstanding the fact that he was charged with drunk driving. Indeed, the respondent's new claim is soundly contradicted by both his sworn testimony and the testimony of his witness, Mr. Madison.

In his testimony, the respondent maintained that he moved his truck *because* he needed to pick up the spilled contents of the toolbox. He explained that his girlfriend had *just arrived* at their home, she kicked over the toolbox, and he was in a hurry to pick up the tools and nails. Mr. Madison testified that he did not go outside *until* he heard the crash of the toolbox being overturned–and Mr. Madison and the intoxicated respondent were in the driveway, with the respondent in the process of picking up the tools and nails, when Deputy Logie arrived. In short, the toolbox spill, and the related movement of the respondent's truck, had to have occurred shortly before the deputy arrived, not earlier in the evening as the respondent now creatively maintains.

Both the circuit court and this Court owe a deferential standard of review to the findings of fact made by an administrative hearing officer. Factual findings may be overturned only if shown to be "[c]learly wrong in view of the reliable, probative and substantial evidence on the whole record[.]" Syl. Pt. 2, in part, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983); *accord* Syl. Pt. 1, in part, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996) ("findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong"). The reliable, probative and substantial evidence in this record fully supports the OAH's finding. Because the OAH was not clearly wrong, this Court should have reversed the circuit court's order and directed the reinstatement of the DMV's license revocation order.

For the foregoing reasons, I respectfully dissent.

---

open to the general public." Syl. Pt. 2, *Reed v. Beckett*, __ W.Va. __, __ S.E.2d __, 2016 WL 6407492 (Oct. 26, 2016). It is also irrelevant that the respondent drove only a short distance while he was under the influence of alcohol. The issue is whether "the Office of Administrative Hearings finds by a preponderance of the evidence that the person did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs, or did drive a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight[.]" W.Va. Code § 17C-5A-2(j). There is no distance requirement specified in this statute, and operating a vehicle in an intoxicated state risks lives and property regardless of the distance the vehicle is driven.