694 S.E.2d 309

**Eric R. CAIN, Petitioner Below, Appellee**

**v.**

**The WEST VIRGINIA DIVISION OF MOTOR VEHICLES, and Joe E. Miller, Commissioner, Respondents Below, Appellants.**

**No. 35013.**

Supreme Court of Appeals of
West Virginia.

Submitted March 30, 2010.

Decided May 6, 2010.

---

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, WV, for the Appellants.

Charles E. Anderson, Fairmont, WV, for the Appellee.

McHUGH, Justice:

The West Virginia Division of Motor Vehicles ("DMV"), through its Commissioner, Joe E. Miller,[1] appeals the January 5, 2009, order of the Circuit Court of Marion County by which the trial court reversed the Commissioner's revocation of the driver's license of Appellee Eric R. Cain. According to the Commissioner, the trial court erred in ruling that the arresting officer lacked the predicate basis for concluding that a crime had been committed at the time of Mr. Cain's arrest for driving under the influence ("DUI"). Based upon our conclusion that the trial court applied an incorrect standard as the basis for its decision to overturn the administrative revocation, we reverse.

## I. Factual and Procedural Background

On June 2, 2007, Corporal Todd Cole of the Marion County Sheriff's Department was investigating a report from a concerned citizen that an individual was lying on the ground in front of a vehicle situated on U.S. Route 19, between Fairmont and Monongah in Marion County, West Virginia. Upon his arrival at the scene at 2:34 a.m., Corporal Cole discovered Mr. Cain asleep on the ground in front of his vehicle. The vehicle was safely parked in a pull-off area; the engine was turned off; and the keys were not in the ignition. When Corporal Cole awakened Mr. Cain, Appellee informed the officer that he was "just trying to get home." While Mr. Cain was relating this information, Corporal Cole detected a strong odor of alcohol on Appellee's breath and a slurring of his speech. The officer further observed that Mr. Cain had bloodshot, glassy eyes and that he was having difficulty trying to walk. Corporal Cole asked Mr. Cain to perform three field sobriety tests, all of which Appellee failed.[2]

Corporal Cole placed Mr. Cain under arrest for DUI at 2:50 a.m., and then took him to the Marion County Sheriff's Department for processing. During an interview conducted by Corporal Cole, Mr. Cain admitted to drinking five or six beers during the three hours prior to his arrest. Pursuant to Mr. Cain's agreement to take a secondary chemical test, the intoximeter test was administered. The results of the chemical test indicated that Appellee had a blood alcohol content level of .157 at the time the test was administered.[3]

Based on the information contained in the D.U.I. Information Sheet prepared by Corporal Cole, the Commissioner issued an order on June 8, 2007, revoking Mr. Cain's operator's license for one year. As part of that order, Appellee was required to successfully complete the mandatory Alcohol Test

---

1. During the pendency of this matter, Joe E. Miller replaced Joseph Cicchirillo as Commissioner of the DMV.

2. Those tests included the horizontal gaze nystagmus test; the walk-and-turn test; and the one-legged stand test.

3. By law, an individual who operates a motor vehicle with a blood-alcohol level of .08 or higher has committed the offense of DUI. *See* W.Va. Code § 17C–5–2 (2009).

and Lock Program; to complete the Safety and Treatment Program; and to pay all required fees.[4] Through counsel, Appellee requested an administrative hearing to challenge the license revocation and the results of the secondary chemical test.[5] When the Commissioner upheld the license revocation following the administrative hearing,[6] Mr. Cain appealed the matter to the circuit court.

Upon its consideration of Mr. Cain's appeal, the circuit court determined that Corporal Cole lacked the sufficient factual predicate to make a DUI arrest as the officer could not testify with any degree of certainty to the period of time, if any, during which Appellee had driven his vehicle while under the influence of alcohol.[7] By order entered on January 5, 2009, the trial court reversed the Commissioner's decision to uphold Appellee's license revocation. Through this appeal, the Commissioner seeks a reversal of the trial court's ruling and reinstatement of the administrative revocation of Appellee's operator's license.

## II. Standard of Review

■ Our review, as we explained in syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996), is governed by the following standard:

On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

With this standard in mind, we proceed to determine whether the trial court committed error by reversing the Commissioner's final order.

## III. Discussion

### A. Statutory Predicate for License Revocation

■ At the center of this appeal is the trial court's conclusion that Corporal Cole lacked the predicate factual basis for arresting Appellee for DUI because he could not testify with particularity as to when Mr. Cain last drove his vehicle. The trial court reasoned that the arresting officer "must be able to identify specific facts and evidence giving rise to a reasonable suspicion that a crime has been committed." Because Corporal Cain could not pinpoint "when, or if, the petitioner [Appellee] had driven the vehicle," the trial court concluded that the arresting officer "did not have sufficient information to conclude that the petitioner drove a motor vehicle while under the influence of alcohol."

■ This Court previously ruled in syllabus point three of *Carte v. Cline*, 200 W.Va. 162, 488 S.E.2d 437 (1997), that

W.Va.Code § 17C-5A-1a(a) (1994) [authorizing license revocation for DUI] does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person.

The issue in *Carte*, just as in this case, was whether there was sufficient evidence to conclude that the individual charged with DUI had actually driven his vehicle while under the influence of alcohol. 200 W.Va. at 166–67, 488 S.E.2d at 441–42. After responding to a call that a vehicle was suspiciously sitting at a stop light at 4:20 a.m., the arresting officer in *Carte* discovered the driver slumped over the wheel with the engine still running, the car in drive, and the driver's foot on the brake. Upon awakening the driver, the officer noticed the odor of alcohol. As was the case with Mr. Cain, the purported driver in *Carte* failed all three field sobriety tests, agreed to take an intoxilyzer test, and

---

4. Mr. Cain had previously committed a DUI offense on December 17, 2001.

5. The administrative hearing was held on September 21, 2007.

6. The final order was issued by the Commissioner on April 9, 2008.

7. By implication, the trial court was recognizing the possibility that Appellee did not begin drinking until he parked his vehicle.

indicated to the officer that he had been drinking a large quantity of beer.[8] *Id.* at 163–64, 488 S.E.2d at 438–39.

In considering whether an officer must observe the actual driving of a vehicle prior to arresting an individual for DUI in *Carte*, we recognized that our previous decision in *State v. Byers*, 159 W.Va. 596, 224 S.E.2d 726 (1976), resolved this issue by ruling that the misdemeanor offense of DUI "does not have to be committed in the presence of the officer to justify an arrest."[9] *Carte*, 200 W.Va. at 167, 488 S.E.2d at 442. The elements of the revocation statute, as we explained in *Carte*, provide the basis for this conclusion. All that is required to seek a license revocation under West Virginia Code § 17C–5A–2 is that the arresting officer have "reasonable grounds to believe" that the defendant committed the offense of DUI. Rather than requiring an arresting officer to witness a motor vehicle in the process of being driven, the statute requires only that the observations of the arresting officer establish a reasonable basis for concluding that the defendant *had* operated a motor vehicle upon a public street in an intoxicated state. *See Carte*, 200 W.Va. at 167, 488 S.E.2d at 442; *accord Lowe v. Cicchirillo*, 223 W.Va. 175, 181, 672 S.E.2d 311, 317 (2008) (stating that "it is not necessary that an arresting officer observe a driver operating a motor vehicle if the surrounding circumstances indicate that he was the driver of the vehicle").

To support a license revocation for DUI, the trial court concluded that the arresting officer has to be able to identify specific facts and evidence that gave rise to a reasonable suspicion that a crime was committed. The standard employed by the trial court—requiring particularized evidence to support "a reasonable suspicion that a crime has been

committed"—is the standard typically used to analyze the constitutional parameters in search and seizure cases. In *Clower v. West Virginia Department of Motor Vehicles*, 223 W.Va. 535, 678 S.E.2d 41 (2009), we recently had the opportunity to review what is required to make an investigatory traffic stop for purposes of complying with both the Fourth Amendment to the United States Constitution and Section 6, Article III of our state constitution. Citing our decision in *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994), we discussed how a reviewing court must evaluate the lawfulness of a traffic stop by examining whether particular facts establish a reasonable suspicion that a crime has been, is being, or is about to be committed. *See Clower*, 223 W.Va. at 541, 678 S.E.2d at 47. Because Mr. Cain's vehicle was parked at the time the arresting officer encountered Mr. Cain, the standard governing the lawfulness of an investigatory traffic stop is clearly inapplicable to the case before us.

The standard that the trial court should have applied to determine whether the administrative revocation was proper, as we discussed in *Clower*, is statutorily specified in West Virginia Code § 17C–5A–2(e) (2004).[10] Under that provision, three predicate findings must be established to support a license revocation. Those findings, in pertinent part, require proof that (1) the arresting officer had reasonable grounds to believe that the person drove while under the influence of alcohol; (2) the person was lawfully placed under arrest for a DUI offense;[11] and (3) the tests, if any, were administered in accordance with the provisions of this article and article five of this chapter. *See* W.Va. Code § 17C–5A–2(e) (2004). As set forth in West Virginia Code § 17C–5A–2(f),[12] the un-

8. In *Carte*, the quantity of beer admitted to was ten or twelve beers. 200 W.Va. at 164, 488 S.E.2d at 439.

9. As we explained in *Byers*, although a misdemeanor offense typically must be committed in an officer's presence to make a warrantless arrest, this is not the case with a misdemeanor DUI offense. 159 W.Va. at 602, 224 S.E.2d at 731.

10. The current version of this provision is found in subsection f. of West Virginia Code § 17C–5A–2.

11. The current version of this statute no longer requires an arrest. Instead, the second finding that must be established is that a person committed a DUI offense. *See* W.Va.Code § 17C–5A–2(f) (2008).

12. Due to statutory amendments enacted in 2008, the three-pronged standard for upholding a license revocation is now set forth in subsection f. rather than e. The only difference in the standard itself is that the second prong, which formerly required that the individual was lawful-

derlying factual predicate required to support an administrative license revocation is whether the arresting officer had reasonable grounds to believe that the accused individual had been driving his or her vehicle while under the influence of alcohol, controlled substances, or drugs.

■ The evidence presented to the hearing examiner on the issue of the grounds relied upon by the arresting officer to arrest Mr. Cain for DUI included the testimony of Corporal Cole, the D.U.I. Information Sheet, and the results of the secondary chemical test. In addition to testifying as to Mr. Cain's difficulty standing and walking; his bloodshot and glassy eyes; and his alcoholic breath, Corporal Cole testified that Appellee told him upon being awakened from his drunken stupor that "he was just trying to get home." During the interview that occurred after the arrest, Mr. Cain told the arresting officer "he had been drinking beer that night and [that] he had five or six [beers]."

In making its ruling, the trial court found that the arresting officer had failed to "establish with any degree of certainty when, or if, the petitioner had driven the vehicle." In addition to the clear implication that Mr. Cain had driven the vehicle in question from his statement to the arresting officer that he was "just trying to get home," the record also contains Corporal Cole's testimony that when he had driven by that same spot less than thirty minutes earlier, no vehicle was parked there. The record is devoid of any factual basis for the arresting officer to believe that Mr. Cain consumed the alcohol he acknowledged drinking only *after* he parked the vehicle. Corporal Cole's observations plus the statements made by Mr. Cain to the arresting officer combined to fulfill the statutory requirement of "reasonable grounds to believe the person to have been driving while under the influence of alcohol." W.Va.Code § 17C-5A-2(e) (2004). As we established in *Carte*, the fact that Corporal Cole did not

observe Mr. Cain driving his vehicle in an inebriated state is not an impediment to an administrative license revocation under West Virginia Code § 17C-5-1 because "all the surrounding circumstances indicate[d] the vehicle could not otherwise be located where it [wa]s unless it was driven there by" Mr. Cain. 200 W.Va. at 163, 488 S.E.2d at 438, syl. pt. 3.

### B. Burden of Proof

■ As a secondary argument, the Commissioner contends that the trial court erred in ruling that the burden of proof was wrongly shifted to Mr. Cain to put on evidence to disprove the DUI allegations.[13] The trial court ruled that by insisting on testimony from Mr. Cain to refute the evidence admitted at the administrative hearing, the hearing examiner erroneously shifted the burden of proof to Mr. Cain.

Contrary to the trial court's position that the hearing examiner wrongly insisted on testimony from Mr. Cain, the record reflects nothing improper on the part of the hearing examiner. At the close of the DMV's case, the hearing examiner merely asked of Mr. Cain's counsel whether he had "any witnesses or evidence to present." After defense counsel answered in the negative, the hearing examiner inquired if the parties were ready to proceed to closing arguments.

In making its findings the hearing examiner determined:

The Arresting Officer's testimony is sufficient to show he had reasonable grounds to believe the Respondent was driving a motor vehicle in this State at a time when the Respondent was under the influence. Furthermore, the Respondent was present at his administrative hearing and chose not to testify, therefore he did not deny that he was driving, and did not present any testimony or evidence that he consumed alcohol after he stopped his vehicle.

The hearing examiner observed that under this Court's decision in *Crouch v. West Virgi-*

---

ly placed under arrest, now requires only that a determination be made as to whether the person committed a DUI offense. *Cf.* W.Va.Code § 17C-5A-2(e) (2004) to W.Va.Code § 17C-5A-2(f) (2008). This statutory change has no bear-

ing on the issue before us, which concerns prong one of the standard. *See supra* note 11.

**13.** Mr. Cain did not testify at the administrative hearing.

*nia Division of Motor Vehicles,* 219 W.Va. 70, 631 S.E.2d 628 (2006), the D.U.I. Information Sheet is admissible evidence at the administrative hearing. We recognized in *Crouch* that "the admission of such a document into evidence merely creates a rebuttable presumption as to its accuracy." *Id.* at 76 n. 12, 631 S.E.2d at 634 n. 12. Under authority of *Crouch,* the examiner stated that "appropriate evidentiary weight can be assigned to the facts contained in the Statement of Arresting Officer/D.U.I. Information Sheet that was offered and accepted into evidence at the administrative hearing." Continuing, the administrative law judge reasoned:

> [T]he information conveyed in said document is taken as true unless evidence is received to the contrary by way of exculpatory evidence. Thus, before an Order of Revocation will be reversed by the Division of Motor Vehicles, a meritorious defense must be presented [and] supported by evidence which sufficiently rebuts the Statement of Arresting Officer/D.U.I. Information Sheet or substantive portions thereof.

After noting that Mr. Cain "offered no evidence whatsoever," [14] the hearing examiner concluded by stating the "D.U.I. Information Sheet, supported by the testimony of the Arresting Officer, is sufficient to show he had reasonable grounds to believe the Respondent was driving a motor vehicle in this State at a time when the Respondent was under the influence."

As we made clear in *Carte,* a license revocation proceeding is not a criminal proceeding but a civil proceeding subject to the Administrative Procedures Act. 200 W.Va. at 165, 488 S.E.2d at 440. We further explained in *Carte* that the applicable burden of proof at a license revocation proceeding is "proof by a preponderance of the evidence." *Id.* at 167, 488 S.E.2d at 442. By citing the fact that Mr. Cain did not testify or present evidence on his behalf, the hearing examiner was not wrongly shifting the burden of proof to the Appellee. Instead, the examiner was merely recognizing that the only evidence before him was the testimonial evidence of the arresting officer and the documentary evidence provided through the D.U.I. Information sheet.

■ In its order, the trial court implies that the hearing examiner's notation of Appellee's failure to introduce evidence indicates that the Commissioner "fail[ed] to apply the proper standard when weighing the evidence in this matter." We disagree. By recognizing that Mr. Cain failed to introduce a meritorious defense, the hearing examiner was merely applying the law. For purposes of a license revocation hearing, the D.U.I. Information Sheet combined with the testimony of the arresting officer may serve to meet the DMV's burden of demonstrating by a preponderance of the evidence that a respondent was unlawfully driving a vehicle while under the influence. The record in this case simply does not support the trial court's ruling that the burden of proof was improperly shifted to Appellee.

Based on the foregoing, the decision of the Circuit Court of Marion County is reversed.

Reversed.

---

14. As the DMV notes, "[o]ther than cross-examining the officer, Appellee offered no evidence to refute that which came into evidence through the agency's files and the testimony of the arresting officer."