**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Everett Frazier, Commissioner of**
**The West Virginia Division of Motor Vehicles,**
**Respondent Below, Petitioner,**

**vs)  No. 19-0411** (Harrison County 18-P-103-3)

**Jerry W. Stire,**
**Petitioner Below, Respondent.**

**FILED**
**November 12, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

This is an appeal from the March 27, 2019, order of the Circuit Court of Harrison County granting respondent Jerry W. Stire's[1] (hereinafter "respondent") petition for appeal and reversing the Order of Revocation issued by the Office of Administrative Hearings (hereinafter "OAH") revoking respondent's driver's license.  The circuit court found that the antecedent arrest of respondent was unlawful because the arresting officer lacked jurisdiction, was not effectuating a permissible citizen's arrest, or acting as a "community caretaker."  Accordingly, the circuit court reversed the OAH's revocation and reinstated respondent's license.  Everett Frazier, Acting Commissioner of The West Virginia Division of Motor Vehicles[2] (hereinafter "DMV"), by counsel, filed the instant appeal.

This Court has considered the parties' briefs, oral arguments, and the record on appeal.  Upon consideration of the standard of review and the applicable law, we find no substantial question of law presented nor prejudicial error.  For these reasons and those set forth herein, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

**I.  Factual and Procedural History**

On June 12, 2014, Officer J. S. Billie of the Shinnston Police Department pulled into the parking lot of the Subway restaurant located in Shinnston, West Virginia, which is on the border of the Shinnston city limits.  Next door to the Subway is a 7-Eleven convenience store that is located outside of Shinnston's corporate limits.  A few minutes after arriving, Officer Billie saw

---

[1] Respondent is represented by Thomas W. Kupec, Esq., Kupec & Associates, PLLC, Clarksburg, West Virginia.

[2] During the pendency of this appeal, Everett Frazier was appointed Commissioner of DMV.  Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, he is automatically substituted as a party.  DMV is represented by Patrick Morrisey, Attorney General, Janet E. James, Esq., Assistant Attorney General, and Scott Johnson, Esq., Assistant Attorney General.

1

respondent exit the driver's side door of a car parked in the 7-Eleven parking lot. He observed respondent run to the back of the car, stumble into the side of the car, "paw at the air," and stagger as he walked into the 7-Eleven. Despite recognizing respondent was outside of Shinnston city limits, Officer Billie followed him into the 7-Eleven and approached him. Officer Billie noted that respondent's eyes were glassy and bloodshot and that he smelled of alcohol. Officer Billie asked respondent if he had been drinking, noting that he had observed him run into his car and stagger while attempting to enter the store. Respondent replied that Officer Billie had not seen him driving and that he was outside of his jurisdiction. Officer Billie replied that, pursuant to West Virginia Code § 17C-5-2, he could approach a driver anywhere in the State of West Virginia. Officer Billie testified that, at that time, respondent admitted having consumed alcohol.

Officer Billie then requested respondent to perform field sobriety tests, to which respondent agreed. Officer Billie opined that respondent failed the horizontal gaze nystagmus test, the walk-and-turn test, and swayed when attempting the one-leg stand test. Officer Billie offered a preliminary breath test to respondent, which he refused. Officer Billie then placed respondent under arrest for driving under the influence ("DUI") and offered him a secondary chemical test, which respondent likewise refused. Respondent signed the West Virginia Implied Consent Statement, which informed him that his license could be revoked for refusing to submit to the secondary chemical test. Respondent engaged in a post-arrest interview with Officer Billie, wherein he denied being under the influence of alcohol, drugs, or controlled substances, but refused to sign his statement.

On July 1, 2014, DMV revoked respondent's driving privileges for DUI, for which he timely requested an administrative hearing from OAH. On October 2, 2014, the Magistrate Court of Harrison County dismissed the criminal DUI charge against respondent, noting that Officer Billie was outside of his jurisdiction. On March 24, 2015, a hearing was conducted before the OAH regarding respondent's license revocation.

On May 31, 2018, the OAH upheld DMV's revocation of respondent's driving privileges for DUI and for refusing to submit to a secondary chemical test. Respondent appealed OAH's order to the circuit court. On March 27, 2019, the circuit court granted respondent's appeal and reversed the OAH's order of revocation. The circuit court found that Officer Billie's arrest was unlawful because he was outside of his jurisdiction and that such unlawful arrest was fatal to the license revocation.

More specifically, the circuit court refused to sanction Officer Billie's arrest as a proper citizen's arrest pursuant to *State ex rel. State v. Gustke*, 205 W. Va. 72, 516 S.E.2d 283 (1999), finding that Officer Billie had not observed respondent actually driving and therefore no breach of the peace had been committed in his presence. Acknowledging, however, that a law enforcement officer need not necessarily observe driving to effectuate a DUI arrest, the circuit court found that there was insufficient evidence to support the inference of driving because there was no evidence the vehicle had recently arrived, that the vehicle was running, that the keys were in the ignition, or that the engine was warm. The circuit court similarly rejected DMV's argument that Officer Billie was acting as a "community caretaker" because the evidence suggested Officer Billie "was investigating a possible DUI, rather than acting out of fear for Petitioner's safety and welfare."

2

The circuit court further rejected DMV's argument that Officer Billie's "reasonable mistake of law" regarding his ability to make DUI arrests anywhere in the State cured the extra-territorial arrest. The court found that any such belief that, as a municipal officer, Officer Billie could make arrests for acts wholly outside of his jurisdiction was not reasonable. Finally, the circuit court found that respondent's refusal to submit to the secondary chemical test was insufficient independent grounds for revocation because West Virginia Code § 17C-5-4 states that such tests are "incidental to a lawful arrest." This appeal followed.

## II. Standard of Review

Our standard of review is well-established: "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). With this standard in mind, we proceed to the parties' arguments.

## III. Discussion

DMV assigns as error the circuit court's determination that respondent's license revocation was improper because it was not preceded by a lawful arrest, due to Officer Billie's lack of jurisdiction.[3] West Virginia Code § 17C-5A-2(f) (2013) provides that in order to determine whether DMV's revocation is proper, the OAH must determine, among other things, "whether the person was *lawfully placed under arrest* for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test[.]" (emphasis added). DMV presents a variety of theories under which it urges this Court to find that the arrest was lawful including 1) the arrest was tantamount to a citizen's arrest authorized under *Gustke*; 2) the arrest was executed pursuant to the

---

[3] DMV appears to abandon on appeal its argument below that Officer Billie had jurisdiction to make an arrest within the county in which his municipality was located. As the circuit court properly noted, West Virginia Code § 8-14-3 (1990), in part, provides that

> [i]n order to arrest for the *violation of municipal ordinances* and as to *all matters arising within the corporate limits* and coming within the scope of his official duties, the powers of any chief, policeman or sergeant shall extend anywhere within the county or counties in which the municipality is located, and any chief, policeman or sergeant shall have the same authority of pursuit and arrest beyond his normal jurisdiction as has a sheriff.

(emphasis added). It is undisputed that Officer Billie's arrest of respondent neither occurred in nor pertained to matters which arose within the corporate limits of Shinnston.

3

"community caretaker" doctrine; and 3) the arrest was otherwise justified despite a reasonable mistake of law.[4] We address each in turn.

## A.     APPLICATION OF GUSTKE

In *Gustke*, the Court addressed whether a DUI indictment was properly dismissed where the arresting law enforcement officer was outside of his jurisdiction. A City of Parkersburg officer was on his way home from his shift when he observed a vehicle which was outside of city limits, driving erratically, and weaving from lane to lane. 205 W. Va. at 75, 516 S.E.2d at 286. He telephoned the Wood County Sheriff's office to inquire if there was a sheriff's deputy in the vicinity who could stop the vehicle but was advised there was not. *Id.* He then requested permission to stop the vehicle and detain the driver until such time as a deputy could arrive. *Id.* The court dismissed the indictment due to the officer's initial stop being outside of his jurisdiction; the State sought a writ of prohibition to preclude the dismissal, arguing that even if the arresting officer was outside of his jurisdiction, he executed a proper citizen's arrest. *Id.* at 76, 516 S.E.2d at 287.

The Court found that "[b]ecause the arrest was not made in connection with a matter that arose within the territorial boundaries of [the officer's] jurisdiction, and did not come within the scope of his official duties, he did not have official authority as a police officer to make the arrest." *Id.* at 78, 516 S.E.2d at 289. Joining many other jurisdictions, however, the Court concluded that the officer nonetheless had authority to make a citizen's arrest for misdemeanors that constitute a breach of the peace, which were committed in his presence. The Court issued the following syllabus points:

> A law enforcement officer acting outside of his or her territorial jurisdiction has the same authority to arrest as does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be authorized to make an arrest.

> Under the common law, a private citizen is authorized to arrest another who *commits a misdemeanor in his or her presence* when that misdemeanor constitutes a breach of the peace.

---

[4] DMV spends a considerable portion of the outset of its brief discussing the distinction between a valid vehicle stop and a valid arrest. This Court has indeed found that a defective initial stop is fatal to a lawful arrest. *See Reed v. Pettit*, 235 W. Va. 447, 451, 774 S.E.2d 528, 532 (2015) ("Under this Court's precedent, a person cannot be considered lawfully arrested for DUI, as a prerequisite to the administrative revocation of the person's driver's license, unless the underlying traffic stop was legally valid."). However, the deficiency in the arrest at issue is Officer Billie's lack of authority to effectuate such an arrest outside of the city limits. DMV's insistence that Officer Billie had a reasonable, articulable suspicion to engage with respondent and thereafter developed probable cause for his arrest is immaterial to whether Officer Billie was lawfully authorized to execute an arrest at all.

Driving while under the influence of alcohol, a controlled substance or drugs, as prohibited by W. Va. Code § 17C–5–2(d) (1996) (Repl.Vol.1996), constitutes a breach of the peace. Consequently, it is a misdemeanor offense for which a private citizen may arrest.

Syl. Pts. 2, 3, and 4, *Id.* (emphasis added).

Recognizing that Officer Billie did not actually observe respondent driving while intoxicated and therefore fails the "committed in his presence" element of a *Gustke* arrest, DMV attempts to bootstrap our holding that an officer need not actually observe driving to justify a lawful DUI arrest. DMV cites to Syllabus Point 3 of *Carte v. Cline*, 200 W. Va. 162, 488 S.E.2d 437 (1997) which holds:

W. Va. Code § 17C–5A–1a (a) (1994) does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, *so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person.*

(emphasis added). The cases cited by DMV illustrate the "surrounding circumstances" which this Court has found sufficiently corroborative of driving while intoxicated, where the officer did not actually observe the driver operating the vehicle. *See Carte*, 200 W. Va. at 167, 488 S.E.2d at 442 (finding running engine and engaged transmission, along with admission of driving sufficient to establish driving); *Dale v. Ciccone*, 233 W. Va. 652, 662, 760 S.E.2d 466, 476 (2014) (finding admission of alcohol consumption and driving prior to stop was sufficient to find driving under the influence); *Dale v. Reynolds*, No. 13-0266, 2014 WL 1407375, at *3 (W. Va. Apr. 10, 2014) (memorandum decision) (finding driver's admission as to where he began drinking, admitted movement of car to location of stop, and discovering driver "unresponsive, in the vehicle with the engine running, lights on, and not parked in a parking spot" sufficient to establish driving); *Cain v. W. Va. Div. of Motor Vehicles*, 225 W. Va. 467, 472, 694 S.E.2d 309, 314 (2010) (finding that when driver "awakened from his drunken stupor" stating "'he was just trying to get home,'" and absence of vehicle from location less than thirty minutes prior was sufficient to establish driving); *see also Montgomery v. W. Va. State Police*, 215 W. Va. 511, 517, 600 S.E.2d 223, 229 (2004) (finding sufficient evidence of driving while intoxicated to substantiate discharge where driver was found asleep in vehicle with lights on and engine running).

In the instant case, however, Officer Billie did not see respondent's vehicle arrive and therefore did not know how long respondent may have been sitting, parked, in the 7-Eleven parking lot. *See Cain*, 225 W.Va. at 470 n.7, 694 S.E.2d at 312 n.7 ("By implication, the trial court was recognizing the possibility that Appellee did not begin drinking until he parked his vehicle."). Officer Billie further conceded that he did not know if someone else drove the vehicle to the 7-Eleven or dropped respondent off to pick up the vehicle. Respondent did not admit to driving just prior to his encounter with Officer Billie or indicate how long he had been at the 7-

Eleven. Officer Billie did not testify that the vehicle was running or bore any indicia of having recently been operated.

In that regard, this case is more akin to the factual scenario in *Reed v. McGrath*, No. 15-1147, 2017 WL 227870 (W. Va. Jan. 19, 2017) (memorandum decision). In *McGrath*, this Court upheld the circuit court's reversal of a revocation where the officer did not observe driving and there was insufficient evidence that the driver operated his vehicle *while* he was intoxicated. The Court noted that

> [t]here is no evidence in the record that Officer Logie tried to determine when Mr. McGrath started drinking as compared to when he moved his truck within his private driveway, that Mr. McGrath divulged this information on the night of his arrest, or that the night's timeline established that he drove his truck while under the influence.

*Id.* at *3. Similarly, here it appears that Officer Billie merely presumed that respondent's vehicle had recently arrived at the 7-Eleven and, having concluded respondent was drunk, that he had therefore been driving while intoxicated. As we observed in *McGrath*,

> it is required that "the arresting officer had reasonable grounds to believe that the accused individual had been driving his or her vehicle *while* under the influence of alcohol, controlled substances, or drugs." Syl. Pt. 3, in part, *Cain v. W.Va. Div. of Motor Vehicles*, 225 W.Va. 467, 694 S.E.2d 309 (2010) (emphasis added). Under West Virginia Code § 17C–5C–4(d) [2010], DMV, not the accused, carries the burden of proving these facts.

2017 WL 227870, at *2 (emphasis in original). Therefore, even if this Court were to apply the standard outlined in *Gustke* to cure Officer Billie's extra-territorial arrest, it is plain that no misdemeanor occurred in his presence as required in *Gustke*, nor were there sufficient surrounding circumstances to establish respondent had actually driven while intoxicated.[5]

---

[5] Further, we caution that the attempt to circumvent the "committed in his presence" requirement of a *Gutske* arrest, by utilizing our caselaw which does not require an officer to actually observe driving, is untenable. Officer Billie cannot, at once, both cloak himself with "color of office" to avoid the requirement of having observed the breach of peace, yet purport to act merely as a private citizen to remedy his lack of jurisdiction.

Moreover, we caution against attempts to expand *Gustke* beyond its holding to permit the types of extra-territorial investigatory acts undertaken by Officer Billie. Forecasting this possibility, the *Gustke* Court discussed the "under color of office" doctrine which "prohibits a law enforcement officer from using the indicia of his or her official position to collect evidence that a private citizen would be unable [to] gather." *Id.* at 81, 516 S.E.2d at 292 (emphasis removed). While the *Gustke* Court did not expressly adopt this doctrine, in affirming the arrest, it noted that

*B.*     *COMMUNITY CARETAKER DOCTRINE*

DMV next argues that Officer Billie's initial encounter and subsequent arrest was lawful because he was acting as a "community caretaker." The "community caretaker" doctrine

> recognizes that, in our communities, law enforcement personnel are expected to engage in activities and interact with citizens in a number of ways beyond the investigation of criminal conduct. Such activities include a general safety and welfare role for police officers in helping citizens who may be in peril or who may otherwise be in need of some form of assistance.

*Ullom v. Miller*, 227 W. Va. 1, 10, 705 S.E.2d 111, 120 (2010). In 2010, this Court adopted this exception to the warrant requirement, holding that

> [f]or an encounter to come within the "community caretaker" doctrine exception to the warrant requirement, the State must establish that: (1) given the totality of the circumstances, a reasonable and prudent police officer would have perceived a need to promptly act in the proper discharge of his or her community caretaker duties; (2) Community caretaking must be the objectively reasonable, independent and substantial justification for the intrusion; (3) *the police officer's action must be apart from the intent to arrest, or the detection, investigation, or acquisition of criminal evidence*; and (4) the police officer must be able to articulate specific facts that, taken with rational inferences, reasonably warrant the intrusion.

Syl. Pt. 7, *Ullom*, 227 W. Va. 1, 705 S.E.2d 111 (emphasis added). In support of application of this doctrine, DMV superficially argues that, after observing respondent stumbling as he exited his vehicle, Officer Billie "had a duty to investigate and ensure that neither the Respondent nor the public was in danger" and by doing so, his initial encounter and subsequent arrest were lawful. We disagree.

---

"[n]o evidence regarding [the driver's] sobriety, or lack thereof, was collected by [the officer]." *Id.* at 82, 516 S.E.2d at 293. It further cited with approval caselaw which prohibits "police officers acting outside their jurisdiction . . . [from] utiliz[ing] the power of their office to gather evidence or ferret out criminal activity not otherwise observable[.]" *Id.* at 81-82, 516 S.E.2d 292-93 (quoting *State v. Phoenix*, 428 So.2d 262, 266 (Fla. Dist. Ct. App.1982)) (emphasis removed). Here, Officer Billie questioned respondent about whether he had been drinking, performed field sobriety tests, requested a preliminary breath test, and a secondary chemical test. Officer Billie testified that only *after* performing the field sobriety tests did he conclude that respondent was under the influence and therefore "unsafe" to drive. While we recognize the continued vitality of *Gustke*, we are unaware of any authority which would permit an officer, while effectuating a *Gustke* arrest, to compel a driver to participate in the full complement of DUI investigatory aids.

Officer Billie's testimony belies any alleged perception of the need to promptly act to ensure the safety of respondent or the public. He testified that he heard a car door open, saw respondent emerge from the vehicle, run into the back of his car, but "didn't think much" of it. After seeing him "paw at the air," he thought "okay." Upon seeing him stagger, he thought "that's weird." Officer Billie testified that what he observed "didn't sit right" with him and he should "check this out." He entered the 7-Eleven and immediately began questioning whether respondent had been drinking and asked him to perform field sobriety tests. When asked if he believed respondent was unsafe to drive, Officer Billie responded, "*After I conducted field sobriety* and what I'd seen, no." (emphasis added). Unlike *Ullom*, we cannot conclude from this testimony that Officer Billie's impetus to interact with respondent "was based on safety and welfare considerations . . . separate and apart from any police investigatory or arrest role." *Ullom*, 227 W. Va. at 13, 705 S.E.2d at 123.[6]

## C.    MISTAKE OF LAW

Finally, DMV argues that Officer Billie's "mistake of law" regarding his ability to execute an arrest for DUI anywhere in the State of West Virginia cures his extra-territorial arrest. As previously indicated, when respondent accused him of being outside of his jurisdiction, Officer Billie replied that West Virginia Code § 17C-5-2 (2010) granted him authority to investigate DUI "anywhere in the State of West Virginia, anybody who drives in this State." *Id*. Ostensibly, Officer Billie was referring to the general prohibition in that statute making it unlawful for "[a]ny person who drives a vehicle in this state" to do so in an impaired state. Although DMV apparently concedes that the statute does not actually grant state-wide authority to make DUI arrest, *see* n.3, *supra*, it argues that the United States Supreme Court case of *Heien v. North Carolina*, 574 U.S. 54 (2014) nonetheless supports its position. We disagree.

In *Heien*, the arresting officer stopped Heien's car for having only one operable brake light, ostensibly in violation of North Carolina vehicle equipment law. *Id*. at 54. During the stop, the officers discovered cocaine and charged Heien with trafficking. *Id*. The Supreme Court granted certiorari after the North Carolina Supreme Court concluded the statute did not actually make having only one working brake light unlawful, but that the officer's mistaken interpretation of the statute was reasonable and therefore, the stop was valid. *Id*. The Supreme Court affirmed, holding that reasonable suspicion, as required for a traffic stop or an investigatory stop, can rest on a reasonable mistake of law. *Id*. at 60.

Importantly, however, *Heien* involves the suppression of evidence obtained pursuant to a traffic stop. It does not pertain to the lawfulness of an extra-territorial arrest. As the Court noted, while a reasonable mistake of law may salvage an otherwise impermissible stop and therefore the evidence flowing therefrom, "mistakes of law cannot justify either the imposition or the avoidance of criminal liability . . ." *Id*. at 67. Here, Officer Billie's mistake of law goes to his very authority to make an arrest; a lawful arrest is a necessary antecedent to a DUI license

---

[6] Even if this Court were to conclude that the initial interaction was proper under *Ullom*, this pertains only to the initial encounter and would not transform Officer Billie's extra-territorial arrest into a "lawful" one, as required by statute.

revocation. A mistake of law does not create jurisdiction where there is none. Accordingly, *Heien* affords no relief to DMV.

However, *Heien* does offer some insight into the type of "mistake" which may provide relief—the area upon which the circuit court below focused. The Court concluded that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable. *We do not examine the subjective understanding of the particular officer involved.*" *Id*. at 66 (some emphasis added). More pointedly, "an officer can gain no . . . advantage through a sloppy study of the laws he is duty-bound to enforce." *Id*. at 67. We therefore conclude, as did the circuit court, that even if *Heien* were applicable, Officer Billie's purported belief about his ability to execute State-wide DUI arrests simply was not reasonable.[7]

We therefore agree with the circuit court's conclusion that DMV failed to establish a lawful arrest, a prerequisite to a valid revocation, and therefore the OAH's revocation was erroneous. For the foregoing reasons, the March 27, 2019, order of the Circuit Court of Harrison County is affirmed.

Affirmed.

**ISSUED**: November 12, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[7] As a final salvo, DMV argues that because the arrest was lawful under any or all of the foregoing theories, the revocation was likewise proper for respondent's refusal of the secondary chemical test pursuant to West Virginia Code § 17C-5-7 (2013). As the circuit court properly noted, a revocation based upon refusal of a secondary chemical test, is also "incidental to a lawful arrest." W. Va. Code § 17C-5-4(c) (2013). Having found no lawful arrest, this argument similarly fails.