**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Everett Frazier, Commissioner,
West Virginia Division of Motor Vehicles,
Petitioner Below, Petitioner

**vs.)  No. 22-0284** (Kanawha County 21-AA-27)

Michael G. Moore,
Respondent Below, Respondent

# MEMORANDUM DECISION

Petitioner Everett Frazier, Commissioner of the West Virginia Division of Motor Vehicles, appeals the March 15, 2022, order of the Circuit Court of Kanawha County affirming the April 19, 2021, decision of the Office of Administrative Hearings ("OAH"), which rescinded the revocation of Respondent Michael G. Moore's driving privileges by the Division of Motor Vehicles.[1] Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In September of 2019, respondent was arrested in Logan County, West Virginia, and charged with driving under the influence ("DUI") in violation of West Virginia Code § 17C-5-2(e). Thereafter, the Division of Motor Vehicles entered an Order of Revocation, revoking respondent's driving privileges. Respondent sought an administrative hearing to contest the revocation of his driver's license, and a hearing was held before the OAH in August of 2020. At the hearing, the parties introduced the DUI Information Sheet and the testimony of the investigating officer and respondent.

The evidence established that the investigating officer witnessed respondent driving a Harley Davidson motorcycle. The investigating officer radioed the Logan County 911 for respondent's registration information. The Logan County 911 informed the investigating officer that respondent's motorcycle was registered as a Honda, prompting the investigating officer to

---

[1] Petitioner appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Elaine L. Skorich. Respondent appears by counsel Matthew M. Hatfield.

stop respondent at approximately 6:45 p.m.[2] Prior to the stop, the investigating officer observed respondent driving normally and did not see respondent commit any traffic infractions. The investigating officer noted on the DUI Information Sheet that respondent exhibited an odor of alcoholic beverage; drowsiness; bloodshot, watery eyes; and body tremors; however, he also noted that respondent was normal when exiting his vehicle, walking to the roadside, and standing. Respondent disputed that he exhibited any indicia of intoxication.

Respondent told the investigating officer that he had had one beer with lunch and that he had taken Suboxone without a valid prescription.[3] At the time of the stop, respondent had a Suboxone film in his wallet. The investigating officer testified:

> I don't recall if he told me he had just taken a Suboxone or actually when he took Suboxone. He just told me that he'd taken Suboxone but he does not have a prescription for them. So I can't tell you if [respondent] had taken a Suboxone five minutes before or if he had taken one five days before.

Respondent also told the investigating officer that he had been prescribed mirtazapine and trazodone by the Hershel "Woody" Williams VA Medical Center.[4] His prescribing information indicated that he should take his mediations at bedtime "for mood or sleep," and respondent testified that he took his medications as directed the evening before the traffic stop and that he did not feel the effects of his medications upon waking in the morning.

The investigating officer administered three field sobriety tests: the horizontal gaze nystagmus ("HGN") test, the walk-and-turn ("WAT") test, and the one-leg stand ("OLS") test. The officer observed impairment detection clues on each of the tests. The officer noted that during the HGN test, respondent's eyes "lacked smooth pursuit, distinct and sustained nystagmus at maximum deviation and onset of nystagmus prior to forty-five (45) degrees in both eyes"; however, the officer admitted that he did not know how far he held the tracking device from respondent's nose, guessing the distance to have been "anywhere from eight to twelve inches, ten inches, something like that." The officer noted that during the WAT test, respondent "took an incorrect number of steps, made an improper turn, stopped while walking, and raised his arms for balance." Finally, regarding respondent's performance of the OLS test, the officer stated that respondent "swayed while balancing, used his arms for balance and counted incorrectly." He also claimed respondent had body tremors during the OLS test.

Respondent attributed his poor performance on the field sobriety tests to injuries sustained while he served in the United States Marine Corps, which caused him to suffer right achilles tendonitis, right knee patellar subluxation with chronic patellar tendonitis, and right knee

---

[2] The 911 dispatcher was mistaken; respondent's motorcycle was properly registered as a Harley Davidson.

[3] Suboxone is a Schedule III controlled substance. *See* W. Va. Code § 60A-2-208(e)(2).

[4] Neither mirtazapine nor trazodone is named as a controlled substance in the West Virginia Code.

instability. For his injuries, he received a 40% service disability rating. Regarding the WAT test, respondent indicated that his right leg bothered him during the test. As for the OLS test, respondent testified, "I had indicated that I had a right knee injury and I couldn't stand for a period of time on my right knee, so I asked to switch legs, which I did, and I was allowed to, and I stood on my left leg." Respondent also has a basal cell carcinoma below his left eye that he claimed can blur his vision at times. Respondent denied being under the influence of alcohol, controlled substances, or drugs at the time of the stop.

The investigating officer did not administer a preliminary breath test. The officer obtained a warrant to draw a blood sample from respondent, and the blood draw occurred at approximately 8:40 p.m. No ethanol (alcohol) was detected in respondent's blood. Neither buprenorphine (Suboxone) nor its metabolite norbuprenorphine were detected in respondent's blood; however, the respondent's blood was positive for mirtazapine, desmethylmirtazapine (a metabolite of mirtazapine), and trazodone.

The OAH entered a final order on April 19, 2021, rescinding the revocation of respondent's driving privileges. The OAH concluded, "[A]lthough the [respondent] did exhibit some indicia of being impaired, the [] evidence considered in its entirety does not prove that this actually happened." Regarding the investigating officer's observation that respondent was drowsy, the OAH said, "[N]othing suggests that he actually fell asleep or nodded off while in [the investigating officer's] company." Regarding respondent's performance on the field sobriety tests, the OAH found that respondent had presented medical documentation detailing his service-related injuries. As for respondent's blood sample, the OAH observed, "While the concentrations of the compounds present in the blood specimen appear to be rather high, nothing was presented to show that the concentrations are above and beyond what would be considered to be a therapeutic range." The OAH noted, "It does not appear that any attempt was made to secure an expert who could appear for the hearing and explain the therapeutic ranges for the various medications."

Respondent appealed the OAH's decision to the Circuit Court of Kanawha County. By order entered on March 15, 2022, the court affirmed the OAH's order. The court determined that, based on the blood evidence and the investigating officer's testimony, the OAH was not clearly wrong and did not abuse its discretion in concluding that respondent was not under the influence of alcohol or Suboxone when he was stopped by the investigating officer. Regarding the HGN test, the court found that petitioner "did not adduce any evidence before the OAH to prove the HGN was properly administered or that [the investigating officer] was knowledgeable of the intoxication cues to be aware." The court concluded that the OAH was not clearly wrong and did not abuse its discretion in determining that "the results of the HGN test did not prove the [r]espondent was" under the influence "of alcohol, controlled substances[,] or drugs." Finally, the circuit court discussed the OAH's determination concerning "therapeutic range":

> The [p]etitioner attempts to shift the burden upon the [r]espondent to show he was not driving while under the influence of drugs by contending that the OAH erroneously relied on the fact no expert witnesses were called to explain therapeutic ranges for the identified substances. . . . The [c]ourt notes that [p]etitioner had the burden of proof before the OAH, not the [r]espondent. Thus, if the [p]etitioner wanted to demonstrate the concentrations of [t]razadone and [m]irtazapine in the

[r]espondent's system were not within the "therapeutic range", it could have easily retained an expert to proffer such opinions. It, however, did not do so.

The circuit court concluded that "the OAH did not commit reversible error based upon a 'therapeutic range' theory."

Petitioner now appeals the circuit court's order, arguing that the circuit court erroneously discounted relevant evidence, including the HGN evidence, and that "the circuit court erred in finding that the petitioner shifted the burden to the respondent by contending that the OAH erroneously relied on the fact that no expert witnesses were called to explain therapeutic ranges for the drugs found in the respondent's system." In reviewing the circuit court's order, we apply "the same standard of review that the circuit court applied to the Commissioner's administrative decision, meaning that we give deference to the Commissioner's purely factual determinations, but we give a *de novo* review to legal determinations." *Ullom v. Miller*, 227 W. Va. 1, 7, 705 S.E.2d 111, 117 (2010). Our review of the circuit court's findings of fact is for clear error. *See* Syl. Pt. 1, in part, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996) ("On appeal of an administrative order from a circuit court, . . . findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.").

West Virginia Code § 17C-5-2(e) (2019), provides, in relevant part, that "[a]ny person who drives a vehicle in this state: (i) While he or she is in an impaired state or (ii) while he or she is in an impaired state but has an alcohol concentration in his or her blood of less than fifteen hundredths of one percent by weight, is guilty of a misdemeanor[.]" A person is considered to be in an impaired state when that person is under the influence of alcohol, a controlled substance, any drug or inhalant substance, any combination of these, or the person has a blood alcohol concentration of eight hundredths of one percent or more, by weight. *Id.* § 17C-5-2(a)(1). The issue before the Court is whether sufficient evidence existed to establish that, under the totality of the circumstances, respondent was driving while impaired by alcohol, a controlled substance, a drug or inhalant substance, or any combination of these. We have recognized that in license revocation proceedings, petitioner bears the burden of proving, by a preponderance of the evidence, that a driver, such as respondent, was driving while in an impaired state. *Cain v. W. Va. Div. of Motor Vehicles*, 225 W. Va. 467, 472-73, 694 S.E.2d 309, 314-15 (2010). Having reviewed the record in this matter, we find no clear error in the OAH and circuit court's determination that the evidence was insufficient to establish that respondent was driving in an impaired state.

First, the evidence supported the conclusion that respondent was not impaired by alcohol when he was stopped by the investigating officer. Although the officer smelled the odor of an alcoholic beverage on respondent and respondent admitted to having a beer with lunch, the blood test results showed that respondent had no alcohol in his blood. Under these facts, we find no clear error in the OAH and circuit court's determination that respondent was not impaired by alcohol.

Second, the evidence supported the conclusion that respondent was not impaired by Suboxone or any other controlled substance when he was stopped by the investigating officer. While respondent admitted to having taken Suboxone, neither the drug nor a metabolite of the drug was detected in respondent's blood. No other controlled substance was found in respondent's blood, and no evidence was presented showing that respondent had consumed a controlled

4

substance other than Suboxone. Consequently, we find no clear error in the OAH and circuit court's determination that respondent was not impaired by Suboxone when he was stopped by the investigating officer.

Third, the evidence supported the conclusion that respondent was not impaired by any drug, particularly his prescription medications, when he was stopped by the investigating officer. No evidence was presented showing that petitioner took any drugs other than his prescription medications (except Suboxone, as discussed above) or inhalants. While the investigating officer noted that respondent had bloodshot and watery eyes, body tremors, and appeared to be drowsy, the officer's other observations—that respondent drove normally, that he did not commit any traffic infractions, and that he dismounted his motorcycle, walked, and stood without difficulty— coupled with respondent's own testimony that he did not exhibit any indicia of intoxication, indicated that respondent's physical appearance, if accurately described by the investigating officer, was not attributable to impairment by his prescription medications. Furthermore, although respondent performed poorly on the WAT and OLS tests, performance on the tests was reasonably attributable to his service-related injuries, for which he was declared partially disabled, rather than impairment by his prescription medications. Moreover, petitioner presented no evidence below demonstrating that respondent did not take his medications as prescribed or that the medications, taken as prescribed, with or without alcohol, could have placed him in an impaired state at the time he was stopped by the investigating officer. Consequently, the OAH's observation that petitioner failed to secure an expert to explain the therapeutic ranges for respondent's medications was relevant and probative of the issue before it. Finally, while respondent performed poorly on the HGN test, even assuming the test was properly administered and that respondent failed to rebut the evidence, evidence of respondent's poor performance on the HGN test, without more, would be insufficient to justify revocation of respondent's driver's license. *See* Syl. Pt. 3, in part, *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012) ("A driver's license to operate a motor vehicle in this State cannot be administratively revoked solely and exclusively on the results of the driver's [HGN] test."). Accordingly, we discern no clear error in the OAH and circuit court's determination that respondent was not impaired by his prescription medications. In conclusion, upon providing the proper deference to the OAH and circuit court's findings, we find no clear error in their conclusion that petitioner was not DUI.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

5